THE STATE OF UTAH, Respondent, v. NATHAN F. HA-WORTH, Appellant.

No. 1282.    (68 Pac. 155).

1. **Homicide: Information: Sufficiency to Charge Murder in the First Degree.**

An information charging a killing by shooting to have been done feloniously, unlawfully, willfully, and with deliberate, premeditated malice aforethought, sufficiently charges murder in the first degree.[1]

2. **Homicide: Change of Venue: Sufficiency of Showing: Service of Copies: Reversible Error.**

Where a homicide case is called for trial on May 26th, and affidavits for change of venue were not filed until May 24th, and affidavits thereafter filed by the State are simply in rebuttal, and defendant does not ask time to procure additional affidavits, but submits the motion, the cause will not be reversed because the defendant, was not served with copies of the State's affidavits, or had no opportunity to examine them.

3. **Same.**

Criminal Code, section 4802 (Rev. Stat. p. 989), requires the trial court in a criminal case to grant a change of venue if the representations made by defendant are true. Section 4836 provides that no person shall be disqualified as a juror by having formed or expressed an opinion founded upon public rumor, statements in public journals, or common notoriety, if it appears to the court that he can act impartially and fairly. The defendant in homicide filed twenty-three affidavits in support of a change of venue to the effect that there was great popular feeling against defendant, and that he could not receive a fair trial,

---

[1]State v. Campbell, 24 Utah 103, 66 Pac. 771; People v. Davis, 8 Utah 412, 32 Pac. 670.

State v. Haworth.

and the state filed fifty-two counter affidavits, to the effect that there was no popular feeling which would prevent a fair trial; and the motion was denied. *Held,* that the denial of the motion could not be said to be erroneous.[2]

**4. Homicide: Jury: Actual Bias.**

An opinion by a venireman in a homicide case that deceased has been unlawfully killed, which it will take evidence to remove, but which is not coupled with an opinion as to who is guilty of the crime, does not disqualify the juror on the ground of actual bias, which is defined in Criminal Code, section 4833, subdivision 2 (Rev. Stat., p. 993), as the existence of a state of mind on the part of the juror which leads to a just inference that he will not act with entire impartiality.

**5. Same: Opinion of Juror.**

Under Criminal Code, section 4836, providing that no person shall be disqualified as a juror by reason of having formed and expressed an opinion founded upon public rumor, statements in public journals, or common notoriety, provided it appears to the court, upon the juror's declaration, that he can and will act impartially and fairly, it is not error, in a homicide case, to accept a juror who states on his *voir dire* that he has an opinion, from what he has heard and read, as to the guilt of defendant, but that he will weigh the evidence independently, and act fairly, impartially, and without bias, and will not be influenced, except by the evidence and the charge.[3]

**6. Homicide: Confession: Cross-Examination: Mental Condition of Defendant: Evidence: Admissibility.**

Where a confession introduced in a homicide case was made on March 30th, and the question whether it was voluntary is in issue, a witness for the state can not be asked on cross-examination whether defendant was in fear of violence on January 1st of the same year.

**7. Same.**

Where the State, in a homicide case, offers preliminary evidence of an alleged confession of the defendant, it is not error to exclude defendant's evidence of his mental condition at the time of the alleged confession, offered before the confession itself is introduced, but proof of defendant's mental condition may only be shown by cross-examination and in rebuttal.

---

[2]State v. Carrington, 15 Utah 480, 50 Pac. 526.
[3]People v. Hoyt, 4 Utah 247, 9 Pac. 407.

8. **Homicide: Confession: Admissibility: Though not Signed.**

A purported confession of defendant in a homicide case, taken down in writing by the person to whom the confession is made, is admissible, though not signed by the defendant.

9. **Homicide: Voluntary Confession: Evidence Sufficient to Show.**

Evidence by a sheriff, who procured a confession from defendant, in the sheriff's care, who is charged with homicide, that he made no threats or promises to defendant to procure the confession, but received it at defendant's request, and that he had refused to talk with defendant at various times, and evidence by a third person, who was present at the confession, that it was not procured by threats, promises, or inducements of any character, is sufficient to show that the confession was voluntary and admissible.

10. **Same: Witness: Refreshing Memory.**

Where a witness for the State, in a homicide case, is interrogated on cross-examination as to a certain conversation, and states that he made a memorandum of the conversation at the time, it is not error, on redirect examination, to permit him to refresh his memory by the use of the memorandum.

11. **Homicide: Evidence: Sufficiency of Motion to Strike out: "Effect" for the Jury.**

Where a witness for the State, in a homicide case, states the substance of a certain conversation, a motion to strike out his testimony on the ground that "the witness is unable to state, either in substance or effect, any of the entire conversation," is properly denied, as the effect of the conversation is for the jury.

12. **Homicide: Impeachment of Witness: Immaterial Question.**

A witness in a criminal case can not be impeached by contradicting an answer made to an immaterial question.

13. **Homicide: Impeaching Evidence: Foundation.**

A question asked a witness for the State, in a homicide case, whether he did not state to a certain person, that, if the latter would testify, he could come to Utah without any danger, is not a sufficient foundation to authorize the introduction of impeaching evidence that the witness stated to such person in California that, if he would testify against the defendant, he would be safe.

State v. Haworth.

**14. Homicide: Evidence: Question Held Improper as Framed.**

The refusal in a criminal case to allow the sheriff, who is a witness for the State, to be asked if he refused to permit the defendant's attorney or his brother to see the defendant privately, in the absence of a showing that such persons had ever requested to see defendant alone is not error, though, if the latter fact had appeared or been included in the question, it would have been admissible as affecting the credibility of the sheriff.

**15. Homicide: Evidence: Admissible in Impeachment: Refusal to Answer: Tend to Incriminate.**

Where a witness for defendant in a criminal case testifies as to an alleged *alibi*, evidence of contrary statements, made by him is admissible in impeachment, though, when he is interrogated as to such statements, he is excused from answering for the reason that his answer would tend to incriminate him.

**16. Homicide: Misconduct of Counsel: Improper Arguments: Appeal: Sufficiency of Record.**

Where an affidavit of defendant's attorney in a homicide case, filed in support of a motion for a new trial, states that the prosecuting attorney commented on the fact that defendant had failed to introduce certain evidence, which was objected to by defendant, and that the court cautioned the jury upon the subject, but neither the attorney's remarks, nor the caution of the court, are stated in the affidavit, or bill of exceptions, or anywhere in the record, the court on appeal can not determine whether the remarks were injurious, and the objection will not be considered.

**17. Same.**

Where defendant's attorney in a homicide case calls attention to certain language of plaintiff's counsel in the argument of the latter to the jury, and states that he desires to except thereto, and that it be taken down, but the court is not asked to pass on the objection, and is silent in respect thereto, an assignment of error based thereon is insufficient to authorize a consideration on appeal of the alleged improper argument.

**18. Homicide: Instructions: Sufficient.**

An instruction in a homicide case that an attempt by defendant to escape is a circumstance which may be considered, in connection with all other evidence, as bearing on his guilt, but is insufficient in itself to determine his guilt, is not subject to the

24 Utah—26

objection that it is an instruction that the slightest evidence in addition to the attempt to escape will authorize à conviction.

19. **Homicide: Instructions: Review on Appeal: General Exception not Sufficient where Portion of Charge is Correct.**

Where an instruction in a criminal case includes two independent propositions, and one proposition is correct, a general exception to the instruction which fails to specifically point out the objectionable portion thereof does not authorize a review of the instruction on appeal.

20. **Homicide: Instructions: Given in ·Substance as Requested: Precludes Objection.**

A requested instruction by defendant's counsel in a homicide case that though a confession voluntarily made by one in full possession of all his mental faculties is often the most satisfactory evidence of guilt, when the *corpus delicti* is proven, yet an alleged confession must be received with great caution, precludes defendant from objecting to an instruction that if a confession made by the defendant was his voluntary act, and is .corroborated by proof that deceased was murdered, and that defendant was so situated that he had an opportunity to commit the crime, it is entitled to great weight.

21. **Homicide: Instructions: Properly Refused when Whole Case Covered.**

Where the instructions given in a homicide case cover the whole case, and properly submit it to the jury, the refusal of instructions requested by the defendant is not error.[4]

(Decided March 17, 1902.)

Appeal from the Second District Court, Davis County.—*Hon. H. H. Rolapp*, Judge.

Nathan F. Haworth was convicted of murder in the first degree and sentenced to be shot, and he appealed.

AFFIRMED.

---

[4]People v. Thiede, 11 Utah 241, 282, 39 Pac. 837; U. S. v. Musser, 4 Utah 153, 7 Pac. 389.

*A. J. Weber, Esq.,* and *J. M. Hamilton, Esq.,* for appellant.

*Hon. M. A. Breeden,* Attorney-General, *Hon. W. R. White,* Deputy Attorney-General, and *Messrs. Richards & Allison,* of counsel, for the State.

BASKIN, J.—It is alleged in the information, upon which the defendant was convicted of murder in the first degree and sentenced to be shot, "that the said Nathan F. Haworth on the twenty-eighth day of March, A. D. 1899, at the county of Davis, State of Utah, did unlawfully, willfully, feloniously, and of his deliberately premeditated malice aforethought, make an assault in and upon one Thomas Sandall, and a certain gun, which then and there was loaded with gunpowder and leaden gunshot, and by him, the said Nathan F. Haworth, then and there had and held in his hands, he, the said Nathan F. Haworth, did then and there unlawfully, willfully, feloniously, and of his deliberately premeditated malice aforethought, shoot off and discharge at, against, and upon the body of the said Thomas Sandall, and thereby, and by thus striking the said Thomas Sandall with the said leaden gunshot, inflicted in and upon the face and left side of his head one mortal wound, of which said mortal wound he, the said Thomas Sandall, then and there instantly died. And so the said Nathan F. Haworth did, in manner and form aforesaid, feloniously, unlawfully, willfully, and of his deliberately premeditated malice aforethought, kill and murder the said Thomas Sandall, contrary to the provisions of the statutes of the State of Utah in such case made and provided, and against the peace and dignity of the State of Utah."

1. The appellant contends that the information does not charge him with murder in the first degree. In the case of State v. Campbell, 24 Utah 103, 66 Pac. 771, we recently held that an information like the foregoing one charged mur-

der in the first degree; and it was so held in the case of People v. Davis, 8 Utah 412, 32 Pac. 670. That case, on appeal to the Supreme Court of the United States, was affirmed in 151 U. S. 262, 14 Sup. Ct. 328, 38 L. Ed. 153. We entertain no doubt as to the correctness of these decisions. This contention of the appellant is therefore untenable.

2. The defendant made a motion for a change of venue on the alleged ground "that the people of Davis county are so prejudiced against him that he can not obtain a fair and impartial trial in said county." The motion was overruled, and this action of the trial court is assigned as error. Twenty-two affidavits of citizens of said county, and the affidavit of A. J. Weber, one of defendant's attorneys, were read in support of the motion. The two following affidavits, in substance, are the same as the others made by citizens of said county in support of said motion, to-wit: "Edward F. Munn, being first duly sworn, deposes and says: That he is a resident of Davis county, Utah, and resides at South Hooper. That he is acquainted in Davis county, Utah, and has lived in said county forty years, generally. That the people of Davis county are greatly prejudiced against the defendant in the above-entitled cause, and that there is a general belief that defendant is guilty. That said belief is widespread; that the defendant in said cause can not obtain a fair and impartial trial in Davis county, by reason of the bias and prejudice of the people of said county against said defendant." "J. W. Att, being first duly sworn, deposes and says: That I am well acquainted in Davis county. Since the arrest of defendant on the charge of murder, I have been in all parts of Davis county, Utah, and have talked with many residents of said county about the defendant, and about the criminal charge against him. That the bias and prejudice of the people of Davis county against Nathan F. Haworth, said defendant, is such that a fair and impartial trial could not be obtained by the defendant in Davis county. That the case has been gen-

erally discussed by the people of Davis county. That many newspaper articles have been published, and the same read by the people. That the deceased, Thomas Sandall, was well known and popular, and that the defendant is unknown and friendless in Davis county. That at the time of the preliminary examination at Farmington there was the greatest excitement, and prejudice against the defendant was everywhere in said county manifested. That the same bias and prejudice still exists, and that inflammatory and sensational newspaper articles, in which it is alleged that the defendant confessed himself guilty to Sheriff Abbott and Hon. E. P. Ellison, have intensified the bias and prejudice against the defendant." The affidavit of A. J. Weber sets out newspaper articles published by the Salt Lake Herald giving an account of the alleged crime, inquest, arrest of the defendant, preliminary examination, and alleged confession of the defendant. On behalf of the State, fifty-two counter affidavits by citizens of Davis county were read. In one of them, L. E. Abbott, sheriff of said county, deposed as follows: "That I arrested the defendant, placed him in the county jail, and that ever since his arrest he has been in my custody. That I escorted the defendant into the said courthouse twice, and out of the same twice, on the day of said preliminary examination, and each time upon which the defendant passed in and out of said courthouse the spectators aforesaid stood near by and looked at the defendant, but in no way or manner did they, or either or any of them, manifest or exhibit any feeling of prejudice or of hatred or ill-will against the defendant. During all the day of said preliminary hearing I conversed with numerous persons, residents of Davis county, who were present at said hearing, concerning the defendant, and in no single instance did I hear any person express or manifest in any way feelings of hostility, hatred, prejudice, or ill-will against the defendant. Since the arrest and incarceration of the defendant as aforesaid, I have traveled many times throughout Davis county,

and in various towns and cities thereof, and conversed with numerous persons residing in various parts of said county concerning the defendant; and I have never in any single instance heard a resident of Davis county express or intimate any feeling of hostility, hatred, prejudice, or ill-will against the defendant. In fact, nearly every inquiry which has been propounded.to me concerning the defendant by residents of Davis county—and there have been many such inquiries—has been, in effect, to ask me if the defendant could be convicted, and what proof there is of his guilt." The other counter affidavits, in import, are the same as the foregoing. The defendant's attorneys objected to the reading of the counter affidavits on the ground that they had not been served with copies, or had an opportunity to examine them. This objection is sufficiently answered by the fact that the case was called for trial and the motion made on the morning of May 26th, and the affidavits in favor of the motion were not served on the State's attorney until the twenty-fourth of that month; that the affidavits objected to were simply in rebuttal of those read by the defense, and the attorneys for the defendant failed to make a request for time to procure additional affidavits, but, without doing so, submitted the motion to the court for decision. Section 4802 of the Criminal Code (Rev. St., p. 989) provides: "If the court is satisfied that the representations of the applicant are true, an order must be made for the removal of the action to the district court of a county free from such objection." Section 4836, page 994, provides that "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters submitted to him." In the case of State v. Car-

rington, 15 Utah 480, 484, 50 Pac. 526, 527, this court held that: "The matter of a change of venue in any case where the court has jurisdiction is within the sound discretion of the trial court, subject to review and reversal only for an abuse of the discretion. It is a judicial discretion, and should be exercised only for good cause shown. The action of the court in the case at bar was based on affidavits for and against the change of venue, and it does not appear from the record that the motion was improperly denied." In view of said decision, and the conflict shown by the affidavits, in connection with said provisions of the Criminal Code, we can not say that the court erred in refusing to grant the motion for a change of venue. Jamison v. People, 145 Ill. 357-367, 34 N. E. 486; State v. Weems, 96 Iowa 426, 65 N. W. 387.

3. Five of the jurors examined on their *voir dire*, namely, T. J. Robbins, James H. Baird, Albert Flitton, James D. Wilcox, and S. H. Ellis, were challenged by the defendant for actual bias, and the challenges were overruled. "Actual bias," as defined by subdivision 2 of section 4833 of the Criminal Code (Rev. St., p. 993), is "the existence of a state of mind on the part of the juror which leads to a just inference, in reference to the case that he will not act with entire impartiality, which is known in this Code as actual bias." The defendant assigns as error the denial of the challenge to these four jurors first mentioned, on the ground that the fact was disclosed in their examination that they had formed opinions that the deceased had been unlawfully killed by some one, that a crime had been committed, and that it would require evidence to remove the opinion so formed. While it is true they had formed such opinions, it appears that they had formed no opinion as to who had killed the deceased; and each one stated that he had no prejudice against the defendant, and could act impartially in the case. It is well settled that the denial of a challenge for bias, under facts such as are disclosed by the examination of said jurors, is not error.

State v. Weems, 96 Iowa 426, 65 N. W. 387; State v. Bryan, 40 Iowa 379; State v. Thompson, 9 Iowa 188, 74 Am. Dec. 342; State v. Carrick, 16 Nev. 120; Lowenberg v. People, 27 N. Y. 336; People v. Foglesong, 116 Mich. 556, 74 N. W. 730; Cargen v. People, 39 Mich. 549; Stewart v. People, 23 Mich 63, 9 Am. Rep. 78; Loyd v. State, 45 Ga. 57; U. S. v. Hanway, Fed. Cas. No. 15,299; Dew v. McDivitt, 31 Ohio St. 139; 17 Am. and Eng. Enc. Law (2 Ed.), 1148. In Cargen v. People, supra, it is held that "a juror in a murder case, who testifies that he has a positive opinion as to whether deceased had been murdered, but had formed none as to the guilt of the accused, and has no bias, and believes that he can render an impartial verdict according to the evidence, is not disqualified." In Lowenberg v. People, supra, it is said that: "It is not a sufficient challenge for principal cause that a juror had formed an opinion that the prisoner had killed the person for whose murder he was indicted. Killing, being but one element of the crime, is consistent with the prisoner's innocence of murder." This case was cited with approval in the case of State v. Carrick, supra. In the case of State v. Thompson, supra, the juror expressed "an opinion as to the fact of the killing of the deceased by the defendant," and the denial of the challenge was sustained. In the case of State v. Weems, supra, several of the jurors expressed unqualified opinions that the deceased had been murdered, but stated that they thought they could give the defendant a fair and impartial trial under the law and evidence, and the denial of the challenges was sustained. Mr. Ellis stated on his *voir dire* that he had an opinion or impression, from what he had heard and read, as to the guilt or innocence of the defendant, but that he would weigh the evidence independently of what he heard and read, and act fairly, impartially, and without bias in the case, and would not be influenced, except by the evidence and the charge of the court. Under the provisions of section 4836, before quoted, and the ruling in the case of People v.

Hopt, 4 Utah 247, 9 Pac. 407, and in the same case on appeal, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708, and in Thiede v. Utah, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237, the denial of the challenge of this juror was not error.

4. It appears from the record that the defendant made a confession on March 30, 1900, and that E. P. Ellison, a witness for the State, was asked whether the defendant on January 1st of that year was laboring under fear of violence. That question was objected to by the State, and the objection was properly sustained, and therefore the assignment of error based upon that action of the trial court is not tenable.

5. The following occurred in the examination of Mr. Abbott, the sheriff: "Q. I will ask you to state, Mr. Abbott, if you have at any time had any conversation with him [the defendant] on the subject-matter of the killing of Mr. Thomas Sandall? A. Yes, sir. Q. Did you hold out any inducement to him to talk upon the subject? A. No, sir; I put him off several times. Q. Did you make him any promise of any kind to induce him to talk? A. Not in the least. Q. You say you put him off several times? A. Yes, sir. Q. When was that? A. I had a talk with him particularly about this killing on the afternoon of March 30th. Q. Of this year? A. Of this year. Q. Pursuant to the conversation that you had with him at that time, did you reduce the subject-matter of your talk to writing? A. Yes, sir. Q. Where did you write it out? A. I wrote it out in the northwest room, upstairs, of the courthouse. Q. What did you do then? A. I telephoned for Mr. Ellison. Q. Well, what else? A. Waited until Mr. Ellison came down. Q. Now, have you that written document? A. Yes, sir. Q. Where is it, Mr. Abbott? A. If it hasn't been taken, it was in the sheriff's room, there. Mr. Weber (defendant's attorney): Now, wait a minute. Before going into this conversation at all, we ask permission to examine Mr. Abbott

further. Mr. Allison (attorney for the State): No objection. The Court: Very well. Mr. Weber: Q. Now, you arrested Mr. Haworth at Portland? A. I received him at Portland. Q. You had requisition papers? A. I got the requisition papers on the twenty-seventh. Q. He had been arrested pursuant to your order? A. Yes, sir. Q. Do you remember any time having a conversation with Mr. Haworth, when he told you to take him out and shoot him, or anything of that kind? Mr. Allison: I object to it as immaterial and as irrelevant. This examination is for the purpose of determining its [the confession's] admissiblity. Mr. Weber: Of course, I ask this on the theory that we can go into his physical and mental condition. By the Court: The objection may be sustained, if that is the object of his testimony. Mr. Weber: Why, that would be the object—as to whether anything would be voluntary. By the Court: Well, the immediate object is to determine whether or not he was of unbalanced mind. Mr. Weber: No; we have a right to go into any conversation that he had with him. By the Court: Yes, sir; that is right. Now, what's your question? Mr. Weber: Whether he asked the sheriff at any time to take him out and shoot him? By the Court: At any time— What do you mean? Mr. Weber: Well, at any time prior to this—prior to March 30th, isn't it, Mr. Allison? Mr. Allison: That's the date, I think. By the Court: The objection may be sustained, as not throwing any light on whether or not the admission was made voluntary or not. Mr. Weber: Note an exception. Q. Did you at any time prior to March 30th—Did you at any time talk to the defendant about changing the complaint or the information? A. No, sir. Q. To murder in the second degree? A. No, sir. Q. Nothing of that kind was ever said? A. Not to me. Q. Did you ever say anything on that subject to anybody in his hearing? A. No, sir. Q. Did anybody say it to Haworth in your hearing? A. Not that I re-

member of. Q. Or when you were present? Not that you remember! Wouldn't you know? A. I most assuredly would, I should think. Q. Was the question of murder in the second degree ever discussed by you? A. I never remember intimating or hearing of such a thing. Q. Was anything said by you to Mr. Haworth as to there being no danger of hanging or shooting in this county? ·A. I talked a good deal about the— Not about the county—about the State. Q. Well, about the State, then? A. Yes. Q. Did you talk to Haworth on that proposition? A. I have talked to him frequently. Q. When did you talk to him about that? A. I remember once or twice in there he said he hoped he didn't get—that he got life imprisonment. Q. When was that? A. Oh, that was about January— He must have sent for me about the sixth or fourth of January. Q. January 4th? A. Yes, sir. Q. Now, what occurred then? Just state that. A. He sent a man to me on January 4th, I think it was, and I says, 'What do you want, Nick?' 'You have me. There is no use my denying it. Money bought me.' Q. How is that, now, 'Money bought me'? A. 'Money bought me.' Q. Now, did you have another conversation with him? If so, when? A. It was on the ninth of January. Q. On the ninth of January? A. Yes, sir. Q. At that time was there anything said about there being no hanging in Utah? A. No, sir. Q. About murder in the second degree? A. No, sir. Q. Didn't you say anything in this conversation at that time, or did you say that you would do what you could for him? A. Never, when I— Q. Wait a minute, I am not asking when, now. Did you at any of these conversations prior to March 30th say that you would do what you could for him? A. No, sir. Q. You say that you never held out any inducements to him at all? A. Not in the slightest. Q. Now, I want to ask you now whether you know whether Haworth, when he was brought here first, feared that he might be lynched? Mr.

Allison: We object to that as being incompetent, irrelevant, and immaterial, and not proper cross-examination. (Mr. Allison's objection was sustained by the court, to which ruling of the court Mr. Weber then and there duly noted an exception.) Mr. Weber: Isn't it true—I am doing this, of course, to make the records, now. Isn't it true that after his arrest, some time, that he was in great bodily— You feared violence being inflicted upon him? Mr. Allison: We object to it for the same reason. (Mr. Allison's objection was sustained by the court, to which ruling of the court Mr. Weber then and there duly noted an exception.) Mr. Weber: Q. In the same line. You need not answer this. I will ask you, Mr. Abbott, if you at any time said of the defendant that he was mentally unbalanced and crazy prior to that confession? Mr. Allison: I object to it for the same reason. (Mr. Allison's objection was sustained by the court, to which ruling of the court Mr. Weber then and there duly noted an exception.) Mr. Weber: Q. Or whether that was not at one time your opinion that he was? Mr. Allison: The same objection. And for the further reason (I think I said that, however) that it is not cross-examination; and for the further reason that the witness is not an expert, and has not qualified himself as such; and for the further reason that it calls for the opinion of the witness, not at the present time, but at a time prior to this trial. (Mr. Allison's objection was sustained by the court, to which ruling of the court Mr. Weber then and there duly noted an exception.) Mr. Weber: That's all at present. Mr. Allison: Q. Now, Mr. Abbott, I wish you would say whether or not these three sheets state what you wrote at that time in the courthouse? A. Yes, sir. Q. Well, now, what did you write down? A. I wrote down the conversation that transpired or occurred between Mr. Haworth and myself. Q. Now, you sent for Mr. Ellison? A. Yes, sir. Q. By telephone? Did he come? A. Yes, sir. Q. Well, when he came here, what did you do? Did you submit

this document to him? A. I disremember whether I submitted it to Mr. Ellison, or just told him the contents of it, and then I took him over to the jail and submitted it—I don't know whether I submitted it to Mr. Ellison before I submitted it to Mr. Haworth or not. Q. Well, did you take it back to the jail and submit it to Haworth? A. Yes, sir; in the presence of Mr. Ellison. Q. How did you submit it to him? A. I says: 'Now, Nick, this is as I understand—about as you told me; and I will read it over, and if it is not all right, I wish you would correct it.' Q. Well, did you read it to him? A. Yes, sir. Q. Did he read it himself? A. I disremember whether he read— Yes; he looked at it. I don't know whether he read it or not. Q. Did he make any corrections in it? A. Yes, sir; he made one correction. Q. Did he suggest one correction in it after you had read it? A. Yes, sir. Q. On the face of it? I wish you would state if it discloses on its face what that correction was? A. Yes, sir; it is marked. It is marked in lead pencil—the correction that he made. Q. Was this document (Exhibit C) which I hold in my hand read to him in his hearing, word for word, and letter for letter? A. Yes, sir; and sentence by sentence; and stopped at the end of each sentence, and asked if that was all that—about as he said it. Q. After it was read to him, and, as you say, some of it read by him, and this one correction made, did he say whether or not it was correct? A. Yes, sir; he said it was correct. Q. He said it was correct after making that one correction? A. Yes, sir. Q. Was any other person than yourself present when it was read to him? A. Yes, sir. Q. Who? A. Mr. E. P. Ellison. Q. Nobody else? A. No, sir; but Mr. Haworth. Q. How? A. The three of us—Mr. Haworth, myself, and Mr. Ellison. Q. Nobody else was present? A. No, sir. Q. At the time that you read it to him, and when you asked him if it was correct, and when he stated it was correct, did you offer him any inducement to make that

statement? A. No, sir. Q. Or hold out any hope to him? A. No, sir. Q. Or make him any promises of any kind, either directly or indirectly? A. No, sir. Q. By which he would be benefited if he made it? A. No, sir. Mr. Allison: We now offer these three pages in evidence, which are marked 'Exhibit C.' Mr. Weber: I object to this because it is incompetent; and I want to make this suggestion: The most that that could be used for would be a memoranda to refresh the recollection of the witness, and, if he has an independent recollection of what was said, he ought to testify from his own recollection, and from what he knows. I make the objection that it is incompetent. (Mr. Weber's objection was overruled by the court, to which ruling of the court Mr. Weber then and there duly noted an exception. Said document was thereupon received in evidence as Exhibit C.) Mr. Allison: I will read it into the record, for fear it might be misplaced. (Mr. Allison thereupon read said exhibit.)"

E. P. Ellison, the party referred to in the testimony of the sheriff, testified that, after the sheriff had read to the defendant Exhibit C, he read it a second time to the defendant, section by section, and that the defendant changed it by substituting for one of the words of the same a different word, and said that as so amended it was true. This witness further testified, in substance, that this action was taken by defendant without any threat, promise, or inducement having been made or suggested to him. At this point the defendant requested permission to put witnesses upon the stand to show, before this witness should be further examined, the mental condition of the defendant before and after his confession was made. This request was denied, but the court at the same time held that the witness could be cross-examined as to the physical and mental condition of the defendant at and about the time the confession was made. This was done, and, after the state had rested; the defendant was permitted to introduce in his behalf evidence of his physical

and mental condition before, after, and at the time of the confession. Counsel for the defendant, in this connection, contend that the defendant should have been permitted, before the admission in evidence of the confession, to cross-examine, primarily, the witnesses Abbott and Ellison respecting the mental condition of the defendant not only at or about the time of the confession, but during the whole time of his imprisonment, and for that purpose to call other witnesses, and assign as error the refusal to grant such request.

In the case of State v. Feltes, 51 Iowa 495, 1 N. W. 755, it is said: "The first error assigned is upon the admission of the testimony of one Emma Squires. She was called to testify to certain confessions of the defendant. His counsel objected upon the ground that he was at the time of the alleged confession under the influence of intoxicating liquor, and was affected by delirium tremens, or otherwise insane; and they asked to be allowed to show by the witness herself and other witnesses that such was the fact, before she should be allowed to testify in regard to the confession, to the end that the court might sustain their objection to her testifying in regard to the confession, if the court should be satisfied that the defendant was affected with delirium tremens, or otherwise insane, or, at least, if her testimony was to be received, it should be after the jury had been made acquainted with the defendant's condition. . . . Evidence that the defendant at the time of the alleged confession was intoxicated or insane was proper to impair or destroy the effect of the confession. The defendant was allowed to introduce such evidence upon cross-examination. But he complains that he should have been allowed to introduce it first, for the reasons above set out. In our opinion, the court did not err. It was for the jury to determine what weight should be given to his confession, in view of his mental condition, as shown. Com. v. Howe, 9 Gray 110. The court therefore could not have properly excluded evidence of the confession. Nor do we think it was the de-

fendant's right to show his condition first, by way of preparing the mind of the jury against any undue impression from the evidence of the confession. The time when the jury was made acquainted with it must, we think, be deemed immaterial. They must be presumed to have given the evidence in relation to it its due weight." In Com. v. Howe, cited in the above case, it is said: "The court instructed the jury that the evidence of intoxication was an objection to the weight, and not to the competency of the testimony, and that, if the defendant was so much under the influence of liquor as not to understand what he was confessing, they should disregard the confessions altogether. These instructions were entirely right." In Rex v. Spilsbury, 7 Car. & P. 187, Mr. Justice Coleridge said: "I am of the opinion that a statement being made by a prisoner while he was drunk is not therefore inadmissible as evidence against him, and that, to render a confession inadmissible, it must be obtained either by hope or fear. This is a matter of observation for me, upon the weight that ought to attach to this statement when it is considered by the jury." The statement was received. State v. Grear, 28 Minn. 426, 10 N. W. 472, 41 Am. Rep. 296; Lester v. State, 32 Ark. 731; Jefferds v. People, 5 Parker, Cr. R. 561; 6 Am. and Eng. Enc. Law, 570. Wharton, in his work on Criminal Evidence (9 Ed., sec. 635), says: "We must also, applying the same tests as we have already applied to witnesses, inquire whether the defendant, at the time of the occurrence narrated, was capable of accurate observation. Hence it is admissible, in order to affect the credibility of the declaration, to show that the declarant was drunk or insane at such time." In support of this statement the case of State v. Feltes, supra, is cited. In section 84 of McKelvey on Evidence, it is stated that "the question as to the mental condition of the accused at the time of the making of the confession is held to be for the jury to determine, upon such evidence as both sides may submit." Neither the refusal of the de-

fendant's request to place witnesses on the stand to show primarily the mental and physical condition of the defendant, nor the admission in evidence of the confession, Exhibit C, was error. In 1 Rosc. Cr. Ev. (8th Ed.), 90, it is said: "If the confession is taken down in writing and signed by the prisoner, or its truth acknowledged by parol, or if it be written by him, then it is put in as an ordinary document, and read by the officer of the court." Rex v. Swatkins, 4 Car. & P. 550; State v. Demareste (La.), 6 South. 136; Peter v. State, 4 Smedes & M. 31; Murphy v. People, 63 N. Y. 590; 6 Am. and Eng. Enc. Law (2 Ed.), 576.

6. Defendant moved to strike out the testimony of the sheriff as to the conversations that he had with defendant, for the reason that there was an inducement and hope held out by the witness to the defendant before the statements of the defendant were made to witness. This motion was overruled, and this action of the trial court is assigned as error. The record not only fails to show that any inducement or hope was held out to the defendant, but, on the contrary, it shows that the confession of the defendant was voluntary.

7. Defendant's attorney, on the cross-examination of the sheriff, interrogated the witness in regard to a conversation which he had with the defendant on the fourth of January, and drew out the fact that the witness had at the time made a memorandum of the conversation in a book which he then had, but had no independent recollection of the direct words. He was, however, cross-examined as to the substance of the conversation. He was also interrogated in regard to a conversation with the defendant on the ninth of January, and stated that he made a memorandum of the conversation at the time in the presence of the defendant. On re-examination he stated that he had no independent recollection of the exact words used in said conversation, but could

24 Utah—27

refresh his recollection in that respect by referring to the memorandum. Thereupon he was permitted, over the objection of the defendant, to use the memorandum to refresh his memory. This is assigned as error. We think that there was no error in the court's permitting him to do so.

8. A motion was made by defendant's attorney to strike out the testimony of the sheriff in regard to certain other conversations with the defendant, on the ground that the witness was unable to state, "either in substance or effect, any of the entire conversation." The effect of the conversation was a matter for the jury to determine from the evidence, and the record discloses that the witness did state the substance of these conversations, so that the assignment of error based upon the refusal of the court to grant that motion is without foundation.

9. In the cross-examination of the sheriff, he was asked the following question, and answered as follows: "Mr. Weber: Q. Didn't you make the proposition to Billy Reavis that, if he would testify—to Billy Reavis—that he could come to Utah without any danger? A. Not in the least. It never entered my mind. Q. You didn't make any propositions to Reavis? A. No, sir. Q. Didn't you tell him that Nick Haworth would testify against him? A. No, sir?" Mr. Reavis was called as a witness for the defendant, and, when on the stand, was asked by defendant's attorney: "While you were at Redding, California—I mean Sacramento—or while you were in California, were any propositions made to you by Sheriff Abbott, and did Sheriff Abbott at any time say to you that, if you would testify against Nick Haworth, you would be safe, in substance or effect?" The objection by the state to this question, on the ground that it was immaterial and incompetent, was sustained, and the defendant assigns as error that action of the court. It is clear that the impeaching question asked Reavis was not a proper one: (1) Because the question asked the

sheriff was immaterial; and (2) because the impeaching question asked Reavis was radically different from the one asked the sheriff, and answered by him.

10. The sheriff, on cross-examination, was asked by defendant's attorney the following question: "Now, during all of the time, from the time that the defendant was bound over to the district court until the time that the information was filed in the district court, did you ever permit the defendant's attorney or his brother to see the defendant privately; that is, not in your presence?" This question was objected to on the ground that it was irrelevant and immaterial. The objection was sustained, and the defendant excepted. The foregoing is all that the record shows upon the subject. It is stated in the brief of defendant's counsel that, "if the sheriff refused to permit counsel for accused to interview his client privately, it was arbitrary, illegal, and barbarous conduct on the part of the witness." Such gross impropriety on the part of the sheriff as that insinuated in the defendant's brief, if it had been shown, would have indicated such a bias against the defendant as to affect the credibility of the sheriff, and which the defendant would have had the right to show on his cross-examination. The question asked the sheriff was, however, not so framed, as might have been readily done, as to include such impropriety. He was not asked whether either defendant's attorney or brother had ever applied to him for permission to see defendant alone, or that he had ever refused to permit defendant's attorney or brother, or either of them, upon request, to see defendant privately, and in the absence of the sheriff. The record fails to show that such was the case, or that at the trial defendant's attorney made such claim. The question was properly overruled.

11. Reavis, who had also been arrested on the charge of having murdered Sandall, was placed upon the stand by the defense. The court instructed him as follows: "I want to

say to you that you need not answer any question which, in your opinion, tends or might tend to incriminate you."

He was thereupon asked the following questions on cross-examination: "State whether or not the following conversation took place between yourself and Mr. Grant at that time and place (that is, in Redding, California) on the eighteenth day of May of this year: Did you say, 'Have you heard whether Nick is sentenced yet?' and then did Grant say, 'No;' and then did you say, 'It ought to have come up on the 26th;' and then did Grant say, 'I don't know;' and then did you say, 'They have already taken Costello's depositions, and paid $40 for them. If I could go to Nick's trial I could get him out of it;' and then did Grant say, 'Well, why don't you go, if you can get him out?' and then did you say, 'I haven't got the money;' and then did Grant say, 'If he isn't guilty, and you can get him out, I'll give you fifty dollars to go with;' and then did you say, 'Jesus Christ! If I go, those Mormon sons of bitches will put a rope around my neck, and hang me as well as Nick;' and then did he say, 'Why, that's terrible! How could they do that?' and then did you say, 'I was with Nick when he killed the man that night. All three of us didn't have a dollar and a half to pull out— What could we do?' Did that conversation take place between you and Mr. Grant at that time and place?" He declined to answer. Afterwards Mr. Grant was placed on the witness stand by the state. The question above set out, which Reavis declined to answer because answering it might incriminate him, was propounded to Grant. The question was objected to on the ground that it had not been answered by Reavis. The objection was overruled, and the defendant excepted. It is contended by defendant's counsel that: "The rule that a witness who says he does not remember or who avoids an answer can still be impeached; that the question he evaded can be answered by an impeaching witness,—does not apply in this case. Reavis had a right not to answer." The reason of the rule

which prohibits a witness from being impeached by proof of his contradictory statements until, on cross-examination, he shall have first been interrogated in respect to the circumstances, and as to when, where, and to whom the statements were made, is aptly stated in 1 Greenl. Ev. (15 Ed.), sec. 462, as follows: "This course of proceeding is considered indispensable, from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given, as well as by a redirect examination to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said." When the foundation for the impeachment is so laid, the reason of the rule is fully met; and it follows that unless the witness, on his cross-examination, admits the imputed statements, and they do not relate to a collateral and immaterial matter, the adverse party then has the right to prove the contradictory statements, and the witness can not defeat that right by refusing to answer on the ground that he would thereby criminate himself, or by answering that he has no recollection of having made the statements imputed to him. This position is sustained not only on principle, but by the weight of both the American and English authorities. Queen's Case, 2 Brod. & B. 313, 314, 6 E. C. L. 130; 1 Starkie, Ev. 213; 2 Phil. Ev. 690; Crowley v. Page, 7 Car. & P. 789, 32 E. C. L. 737; Greenl. Ev. (15 Ed.), sec. 462, note 1; Dufresne v. Weise, 46 Wis. 290, 298, 1 N. W. 59; Bressler v. People, 117 Ill. 422, 434, 8 N. E. 62; Ray v. Bell, 24 Ill. 451; Nute v. Nute, 41 N. H. 60; Payne v. State, 60 Ala. 88; 1 Thomp. Trials, sec. 307. In the Queen's Case, supra, Abbott, C. J., in an able opinion, said: "The legitimate object of the proposed proof is to discredit the witness. Now, the usual practice of the courts below, and a practice to which we are not aware of any exception, is this: If it be

intended to bring the credit of a witness into question by proof of anything that he may have said or declared touching the cause, the witness is first asked upon cross-examination whether or no he has said or declared that which is intended to be proved. . . . If the witness declines to give any answer to the question proposed to him, by reason of the tendency thereof to criminate himself, and the court is of opinion that he can not be compelled to answer, the adverse party has, in this instance, also, his subsequent opportunity of tendering proof of the matter, which is received, if by law it ought to be received. But the possibility that the witness may decline to answer the question affords no sufficient reason for not giving him an opportunity of answering, and of offering such explanatory or exculpatory matter as I have before alluded to." In 29 Am. and Eng. Enc. Law, 790, 791, it is said: "There has been some conflict of English authority as to whether it is admissible to prove a previous statement of the witness in conflict with his testimony, where he says he has no recollection of having made the statement. It has been held that the statement may not be proved unless he expressly denied that he made it; but it appears to be the better opinion that, where the suggested statement is a contradiction of the testimony of the witness upon the stand, it may be proved, unless he admits that he made it, when he is questioned about it, provided, always, that such statement is material to the matter at issue. The latter rule has generally been preferred where the question has been raised in American courts, though there are some cases in which it was held that evidence of the imputed statement should not be received where the witness said he had no recollection of having made it." Numerous cases which support this text are cited in note 1, p. 971. As Reavis testified to the alleged alibi of the defendant, his contradictory statements were material; and, as the proper foundation for their introduction had been laid, the objection to their admission in evidence was properly overruled.

12. In support of the motion for a new trial, A. J. Weber, an attorney for defendant, made an affidavit in which he deposed "that during the argument of the above case by W. H. Streeper, the attorney for plaintiff, he commented upon the fact that defendant had failed to deny certain evidence introduced by the prosecution, all of which was objected to by me, upon which the court duly cautioned the jury upon such subject." This action of the county attorney is assigned as error. The objection respecting this matter was not incorporated into the bill of exceptions; and neither what the attorney said, nor the caution of the court, is stated either in said affidavit or the bill of exceptions, and is not shown anywhere in the record. This being so, we are unable to determine whether the remarks of the county attorney were injurious to the defendant; and, as the bill of exceptions is silent in respect to the matter, for that reason, also, we can not consider the objection.

13. Exception was also taken to certain remarks made to the jury by Mr. Allison, who assisted the county attorney at the trial. All that appears in the bill of exceptions or the record in respect to the matter is as follows: "During the course of his argument, Mr. Allison made use of the following language: The law writers call it the 'insanity dodge;' it is called the 'insanity dodge;' that the defense of insanity is called the 'insanity dodge.' Mr. Weber: I desire to except to that language of counsel and ask that it be taken down." The court was not asked to pass upon the objection, and was silent in respect to the same. The assignment based upon the foregoing facts is not tenable.

14. The nineteenth instruction given to the jury is as follows: "Evidence has been introduced tending to prove attempted escapes of the defendant while in the custody of the sheriff of this county on this charge. If you find from the evidence that the defendant did thus attempt to escape from custody once, or more than once, this is a

circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of his guilt or innocence; but the mere fact that the defendant attempted to escape from custody is not sufficient, in and of itself, to determine his guilt." The defendant's exception to this instruction is a general one, and fails to specifically point out the objectionable matter relied on. In the brief of defendant the objection urged is that it, "in effect, told the jury that the slightest evidence in addition to the attempt to escape would be sufficient for conviction." Its language does not warrant such an interpretation, and as it contains two independent propositions, the first of which is correct, beyond question, it is not, under the well-settled practice announced in numerous decisions of this court, subject to review on appeal. The reason for this practice is well stated in the case of Thiede v. Utah, 159 U. S. 521, 16 Sup. Ct. 62, 40 L. Ed. 237, which affirmed the decision in 11 Utah 241, 39 Pac. 837.

15. The twenty-fourth instruction is as follows: "If you believe from the evidence that the confessions or admissions testified to by the witnesses as having been made to them by the defendant were so made, and that they were the spontaneous and voluntary acts of the defendant, and if you further believe that such confessions have been corroborated by satisfactory proof that the said Thomas Sandall was murdered, and that the defendant was so situated that he had an opportunity to commit the crime, then such confessions and admissions may be entitled to great weight in your minds; and if you believe from all the evidence, beyond a reasonable doubt, that the defendant is guilty, then you should so find by your verdict." The objection to this urged in the defendant's brief is that "the court invaded the province of the jury." The exception to this instruction can not be sustained: (1) Because the instruction contained distinct propositions, the latter of which is correct, and the exception taken

does not state the grounds of the objection; (2) because the instruction was a substantial compliance with the request made by defendant's attorney, which is as follows: "While confessions voluntarily made by one in full possession of all his mental faculties are often the most satisfactory evidence of guilt, when the *corpus delicti* has been proven, I charge you that alleged confessions must be received with great caution." In the twenty-eighth instruction the court charged the jury that: "Alleged confessions of a prisoner out of court are doubtful species of evidence, and must be received with great caution. They must be carefully weighed and scrutinized, and it must appear to you that they were made by one in his right mind; and, if there is evidence contradicting such alleged confessions, you must take such evidence into consideration, and if you find that the alleged confessions are contradicted, and that you have a reasonable doubt as to the truth of such alleged confessions, it is your duty to acquit the defendant." The facts do not support defendant's contention.

16. The defendant requested the court to give a number of instructions, some of which were refused, and others given with modifications. This action of the court is assigned as error. As the trial court's charge covered the whole case, and properly submitted it to the jury, the refusal of defendant's request was not error. It was so held in the case of People v. Thiede, 11 Utah 241, 282, 39 Pac. 837, which was affirmed on appeal in the case of Thiede v. Utah, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237; and it was also so held in the case of U. S. v. Musser, 4 Utah 153, 7 Pac. 389. The cases in 11 Utah, 241, 39 Pac. 837, and 4 Utah 153, 7 Pac. 389, cited and followed the decision in the case of Railroad Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898, in which it was said, in the opinion delivered by Mr. Justice Swayne, that: "It is the settled law in this court that if the charge given by the court below covers the entire case, and submits it properly to the jury, such court may refuse to

instruct further. It may use its own language, and present the case in its own way. If the results.mentioned are reached, the mode and manner are immaterial. The court has then done all that it is bound to do, and may thus leave the case to the consideration of the jury. Neither party has the right to ask anything more. Laber v. Cooper, 7 Wall. 565, 19 L. Ed. 151."

17. Counsel for defendant have made fifty-five assignments of error, which we have carefully considered; but, as those which we have already passed upon are the most plausible and important ones assigned, it is only necessary to add that, after a careful examination of the whole record, we are fully satisfied that it discloses no reversible error.

The judgment of the court below is affirmed, and the case is remanded for further proceedings in accordance with law.

MINER, C. J., and BARTCH, J., concur.