Kinkade, J.
 

 This is a first degree murder case. The homicide occurred in the village of Wellsville, Columbiana county, Ohio, about 2 o’clock a. m., on May 17, 1926. The charge upon which the conviction was based was the shooting of a police officer while he was engaged in the discharge of his official duty. The indictment contained two counts. The first count charged willful, malicious, and premeditated murder. The second count charged the willful, malicious, and intentional killing of a policeman
 
 *398
 
 while on duty. The jury found the accused guilty only upon the second count in the indictment, and recommended mercy. Sentence of life imprisonment was imposed. The judgment of the court of common pleas was affirmed by the Court of Appeals. The plaintiff in error prosecutes error to this court.
 

 The accused entered a plea of not guilty when arraigned, and at the trial offered evidence tending to establish his claim that he was continuously at a designated residence in Wells ville, some distance away from the shooting, for several hours immediately prior thereto, and only came upon the scene of the homicide near the time of the shooting, as he was going to his home from the place where he had been during the night, up to that time. His own testimony was that when he was near the scene of ,the shooting he passed two men standing near an alley, who began shooting at him; that on this account he started to run in the direction of his home, and while he was running, passed upon the street the point where the policeman was shot, and that at this latter point certain other shots were fired by parties he did not know, one of which shots wounded him in the left foot and another penetrated his right leg from the left and in front, the bullet lodging in his right hip. He testified that after he received these wounds, he changed his course and abandoned his previous intention to go to his home and went in a different direction, to the home of a friend with whom he had previously roomed, and which was nearer to the point where he then was than was his home, and that he adopted this course because he feared that the parties who had wounded him might follow him and kill him unless he got
 
 *399
 
 off of the street and into some residence as quickly as possible.
 

 At the time in question, and in the vicinity where the shooting occurred, which was in a residence neighborhood, most of the people thereabouts were' in bed and asleep. The evidence discloses the fact that a group of persons who were in the immediate vicinity where the policeman was shot were engaged in singing and other loud and boisterous conduct, to the annoyance of the people in their homes in that vicinity. The singing stopped suddenly, as if by the command of some one, presumably the policeman who was shot, and then a number of shots were fired, and following that more boisterous and noisy talk began, and then more shooting occurred. The evidence was that the number of shots ranged from five to fifteen, and that the shooting was participated in by a number of individuals, using guns of different caliber, as indicated by the concussions.
 

 Soon after these occurrences, the policeman was found dead in the front yard of a residence near which the accused was shot, as he claims, when he was running away from the shooters. The policeman when discovered had his revolver in his hand, and every cartridge in the revolver, five in all, had been fired.
 

 It was the claim of the state that the accused was one of the group of persons engaged in boisterous conduct on the street, and was one of the shooters, and that he had engaged with others in an effort to prevent the policeman from carrying out his orders given to quiet the crowd.
 

 It was found that the policeman had'been shot five times. The evidence tended to establish the fact
 
 *400
 
 that the bullet that was extracted from the hip of the accused was a bullet that had been fired from the policeman’s gun, and that the powder marks found on the clothing of the accused indicated that when this shot was fired the accused and the policeman were very close together, if not engaged in a personal struggle; at any rate, that the muzzle of the policeman’s gun could not have been more than twenty-four inches away from the accused when the shot was fired.
 

 The accused went to the home of his friend, and after endeavoring to arouse his friend to admit him at the front of the house, without avail, he went to the back of the house and there broke in a window Which enabled him to enter the house from the rear. His story is that he went upstairs and rapped on the door of his friend and that his friend told him that he could go into his son’s room and sleep for the night. His testimony is that he found cloths in the son’s room and bandaged his own wounds, and stayed there until morning, when he was taken to the hospital.
 

 The chief of police testified concerning an interview he had with the accused at the hospital, in which he said:
 

 “I asked Nick which way he run when he shot Kenney [the policeman], and he said, ‘Up the street.’ I asked him what kind of a gun he had, and he said, ‘A blue steel.’ ”
 

 The accused testified upon the trial that he was entirely unarmed at this time, although he owned a blue steel gun. He said the gun at that time was at the place where he roomed.
 

 The testimony of the state, and the testimony
 
 *401
 
 offered by the accused, including his own, concerning his whereabouts and movements on the night of the homicide, is extremely contradictory. The jury might have found from the evidence the facts to be as claimed by the accused, or the facts to be as claimed by the state. Evidently the jury found against the accused with respect to his whereabouts, movements and actions at the time of this homicide, and, if so, that finding would thoroughly discredit the testimony of the accused himself.
 

 An alibi is not only a legitimate, but a very complete, defense, when sufficiently .sustained by evidence. But when this issue is presented by an accused and the evidence fails to sustain it, but, on the contrary, traces him to the very place at a given time, at which he says he was not, the situation becomes very dangerous to the accused. The jury may have reached the conclusion that the officer shot one of the men, to wit, the accused, who was very close to the officer, and who was either struggling with the officer or shooting at the officer, and hence was shot at by the officer.
 

 Complaint is made that there is no evidence in the record to sustain the claim of the state that the accused aided or abetted in the hilling of the officer, and that consequently the charge of the court on the issue of aiding and abetting was entirely unwarranted, and particularly so as nothing was alleged of that character in- the indictment. It is sufficient to say that the indictment need not charge that the accused aided and abetted in the commission of the crime charged. The statute provides that one who aids or abets can be prosecuted as a principal and punished accordingly, and the proof of aiding and
 
 *402
 
 abetting is entirely competent under an indictment charging the accused as principal.
 

 The Court of Appeals found the evidence sufficient to justify the charge of the court on aiding and abetting, in which we fully concur.
 

 It is said that the court committed prejudicial error in permitting counsel for the state to cross-examine a witness called by the state as a hostile witness, for the reason, among others, that the state knew before calling the witness that when he took the stand he would repudiate a former statement that he had made detrimental to the accused. This matter was thoroughly gone into by the trial judge and counsel, in the absence of the jury, and, after having the entire situation before the court, the state was permitted over the objection and exception of counsel for the accused to call the witness, and, while on the stand, to ask him if he had not previously made a statement contrary to his position at the time of the trial, and this examination took place in the presence of the jury. After hearing the examination, one of the regular adjournments of court occurred, and, thereafter, on the reconvening of the jury, the court withdrew this evidence from the consideration of the jury. Exception was taken to the court’s not withdrawing it before the recess. It is insisted that this constituted prejudicial error. We are of the opinion that if any error occurred in the permitting of this examination, it was entirely cured by what the court said to the jury in withdrawing it from their consideration.
 

 At the close of all the evidence, several requests were presented by counsel for the accused, who asked the court to give these requests separately to
 
 *403
 
 the jury before argument. These requests were given, and after the argument the court charged the jury generally on the whole case. Throughout the entire charge it is plainly manifest that the trial court went to the fullest length to preserve and protect every right of the accused.- There is nothing in the charge, from beginning to end, indicating in the remotest degree that the trial judge expected the jury to return a verdict of guilty. It would be difficult, indeed, for any court to write a charge that-would more completely and effectively protect all the rights of the accused than does the charge that was given in this case.
 

 During their deliberations, the jurors came into court for further instructions with respect to the forms of verdict that had been submitted to them, and in the presence of counsel for the state and for the accused the court went over these matters and made everything entirely plain and satisfactory to the jury.
 

 Misconduct on the part of the prosecuting attorney in argument is claimed by counsel for the accused. Certain remarks made by counsel at a given point in argument were objected to, and thereupon the court admonished counsel that the statements were improper and should not have been made, and they were withdrawn by counsel. In view of this action of the trial court and counsel for the state, we are not able to sustain the claim that error prejudicial to the accused arose by reason of such statements in the argument of counsel for the state.
 

 It is clearly manifest that the accused' was given a fair trial in every respect. It is true that no witness testified that he saw the accused shoot, or shoot at,
 
 *404
 
 the policeman, or that he saw the accused with a revolver in his hand at the time of the homicide. The evidence of guilt is circumstantial. The facts were with the jury, and the jury returned a verdict of guilty,
 

 As has been said, the evidence is.in great conflict, but that does not justify a reviewing court in disturbing the finding and judgment of the trial court as not sustained by the evidence. The judgment of this court in the case of
 
 Breese
 
 v.
 
 State,
 
 12 Ohio St., 146, 80 Am. Dec., 340, is particularly applicable to the situation here. The fourth clause of the syllabus of that case reads:
 

 “A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony. ’ ’
 

 We quote the following from the opinion in that case, at page 156:
 

 “The jury who try a cause and the court before which it is tried, have much better opportunities to determine the credibility and effect of the testimony, and we ought, therefore, to hesitate before disturbing a verdict, rendered by a jury and confirmed by a court, possessing such advantages, merely because, there is an apparent conflict in the testimony. The conflict, or its effect, might all disappear, if the witnesses were examined before us and we could see and hear them face to face, as they were seen and heard by the court and jury whose verdict and judgment are passing in review before us.”
 

 We find no error manifest in the record justifying
 
 *405
 
 a reversal, and the judgment of the lower courts will he affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Allen, Robinson, Jones and Matthias, JJ., concur.