THE STATE OF OHIO, APPELLEE, *v.* LANDRUM, APPELLANT.

(No. 22793—Decided July 6, 1953.)

*Mr. Frank T. Cullitan,* prosecuting attorney, for appellee.

*Mr. P. H. Stern* and *Mr. Myron D. Malitz,* for appellant.

KOVACHY, J. This is an appeal on questions of law from a verdict of murder in the first degree, with a recommendation of mercy, by a jury in the Court of Common Pleas.

It appears from the evidence that Ethel Landrum, defendant, married William Landrum in 1940. He was a big man and a good worker with a habit of becoming intoxicated almost every week-end, at which time he would beat up, abuse and mistreat his wife shamefully. Seven witnesses took the witness stand to describe his outrageous conduct during their married life until his death on Sunday, August 10, 1952.

It appears that William Landrum was out all night Saturday and was seen (early Sunday morning by defendant, Ethel Landrum) in his automobile with another woman carrying on amorously. Ethel told her neighbor, Pauline Alexander, on Sunday morning that she had in mind killing her husband at some time when he was asleep. However, before parting she told Mrs. Alexander that she had changed her mind and to forget about it. That same day she called Mrs. Alexander on the telephone at 6 p. m. and this conversation took place:

"Well I did it.

"Did what?

"I killed Billy.

"You did what?

"Well, he is gone."

That Sunday afternoon William Landrum fell asleep in the kitchen of his living quarters and was persuaded by a roomer to go to his own bedroom to continue his sleep. Ethel Landrum was in the bed-

room at the time. Shortly after his entrance, two shots were heard by the roomer and his grandson. The roomer walked to a hall which led to the Landrum's bedroom and saw the defendant standing in the doorway with a pistol in her hand and thereupon he said to her, ''You ought to be ashamed of yourself for shooting around.'' While returning to the kitchen, he heard two or three more shots. Some minutes thereafter Ethel Landrum was seen walking through the house with something wrapped in a newspaper in her arms. In response to the question of why she did it, she said, ''The s-of-a-b did me wrong.'' William was found dead on his bed lying on his left side with three gunshot wounds. One bullet had entered the right side of his face, another his right arm, and a third his right armpit. The course of all three bullets ran upward and in the same general direction. The shot in the face was instantly fatal. A fourth bullet had bored through the headboard of the bed in an upward course and became imbedded in the wall behind. There were no powder marks.

The following morning the defendant told two police officers that she had gotten tired of taking her husband's arguments and fighting and upon waiting two or three minutes after he fell asleep on his bed she slipped around the foot of the bed to a chifferobe drawer to obtain a gun. She then closed the curtains of the doorway ''so nobody could see her'' and standing five or six feet from William Landrum, emptied the gun. The statement was later retold and typed, as spoken, by another police officer in the presence of the same two officers who first heard it. At the trial, however, defendant told a different story. She there claimed that her drunken husband, in the midst of a bitter quarrel over the occurrence of the night before, suddenly confronted her with a gun and threatened to kill her. In great fear of her life she grappled for pos-

session of the gun, during which it was discharged once or twice. He fell on the bed, loosening his grip on the gun, at which time she got possession of it and retreated to the doorway. He raised himself in bed and again threatened to kill her, and she, realizing that she could not get away from him because of an infected leg, shot him in self-defense.

The jury by its verdict manifestly did not believe the story told by her in court.

The defendant presents seven specific assignments of error. We discuss them seriatim.

"1. That the trial court erred in its charge to the jury by directing a verdict of 'guilty of at least first degree manslaughter' in the event that the jury found that the defendant did not act in self-defense."

We have read the charge of the trial judge and find it a full and complete charge on the matters herein involved. He charged correctly as to murder in the first degree, murder in the second degree, manslaughter in the first degree, and self-defense. He told the jury in plain language that defendant should be found not guilty of any crime if she established her claim of self-defense by a preponderance of the evidence. He told the jury also that if it did not find in her favor on the question of self-defense, it should then consider the crime of murder in the first degree, and if the state had proven every element of that crime beyond a reasonable doubt, to find her guilty of it. But, if it had not proven her guilty of murder in the first degree, to find her not guilty of that crime and to then proceed with the consideration of murder in the second degree, and if not guilty of that, to the consideration of manslaughter in the first degree, and "she would not be guilty of that offense" unless the jury was satisfied beyond the existence of a reasonable doubt.

Near the conclusion of his charge, in explaining the various forms of verdicts, the trial judge said:

"If, however, ladies and gentlemen of the jury, you come to the conclusion that the state has failed to prove, or that the defendant has failed to establish her defense of self-defense as alleged and claimed by this defendant, by a preponderance of the evidence, and you come to the conclusion after a full and careful consideration of all the evidence, the defendant in this case having admitted that she shot her husband, and if it is found by the jury that she did not do so while acting in self-defense, this defendant would at least be guilty of the crime of manslaughter in the first degree. So I say to you, ladies and gentlemen of the jury, under all of the evidence, under all of the rules of law that the court has given to you, the defendant can be found not guilty of these crimes only if she acted in self-defense. If she has failed to establish that defense you are not to consider the verdict of not guilty under those circumstances."

From the charge of the court and the verdict of the jury, it seems patent to us that the jury never came to consider the included crime of manslaughter. It necessarily follows that the above remarks made in the nature of an afterthought by the trial judge, cannot under these circumstances be deemed prejudicial to the substantial rights of the defendant.

"2. That the trial court erred by invading the province of the jury."

In the same charge discussed and set forth above under assignment of error No. 1, the judge said:

"The defendant in this case having admitted that she shot her husband * * *."

The defendant claims error on the ground that the judge assumed a fact which was in dispute. The defendant on cross-examination testified as follows:

"I said, when he raised up and said he was going to kill me and called me those names, that is when I fired."

It is conclusive in this case that the shot in the face was the one that killed the victim instantly, so that even accepting the version told by the defendant in court, the fact remains that she unquestionably fired the shot that killed her husband. That being so, we fail to find any prejudice resulting from this remark of the trial judge.

"3. That the raising of a plea of self-defense is not inconsistent with the claim that the defendant did not commit the homicide."

The defendant at no time said that her husband was shot during the scuffle described by her in court. It is inconceivable that powder marks would not have been found on his person had that occurred. The jury moreover conclusively indicated by the verdict that it believed the statement made by defendant to the police the day after the shooting. We accordingly find no error in this regard.

"4. That the trial court erred in admitting in evidence an unsigned and unacknowledged written statement alleged to have been made by defendant."

The underlying facts concerning this document are not in dispute and no claim was made that the statements contained in it were not voluntary. The officers testified that the defendant read it and acknowledged its correctness but refused to sign it upon advice of counsel. The defendant claimed in court that the writing was brought to her for signature the day following its composition and that she refused to sign it because it did not contain the statements she had related to the officers.

The prosecuting attorney argues that the paper was not offered as a confession in his case in chief; that it was offered in rebuttal as a direct impeachment of defendant's testimony in connection with it. The record discloses that the trial judge received it in evidence and made no comment whatever to the jury about it.

We feel that under the circumstances the confessive character of the document so predominates that we should regard it as a proffer of an unsigned confession. As such, we find no error in its being received in evidence.

The general rule as to the admissibility of such a document, is stated in 23 A. L. R. (2d), 926, Section 6:

"Where an oral confession taken down in writing or typing, or stenographically and then transcribed, by a third person is acknowledged by the accused to be correct when he reads or hears it, there seems to be no question of its admissibility in evidence even though it was never signed by him."

The Court of Appeals of the Second Appellate District of Ohio dealt with the problem in *State* v. *Cremeans,* 46 Ohio Law Abs., 573, and states the applicable law in paragraph 2 of the syllabus:

"A statement of confession taken and transcribed by a stenographer but unsigned by the accused, is admissible where corroborated by other evidence and where no issue has been raised as to the involuntary character of such confession."

2 Wharton Criminal Evidence (11 Ed.); 961, Section 582, says:

"It is not necessary to the admissibility of a written confession * * * that it should be signed by the accused."

The Supreme Court of Colorado states the law in *Moya* v. *People* (88 Colo., 139), 293 P., 335, paragraph 5 of the headnotes as follows:

"In homicide prosecution, defendant's unsigned written statements, merely corroborative of oral testimony which was clearly admissible, *held* properly admitted."

The Court of Errors and Appeals of New Jersey, in *State* v. *Donato* (106 N. J. L., 397), 148 A., 776, headnote 11, states:

"Confession reduced to writing by one other than accused, and signed or admitted by him to be correct, is admissible as 'written confession'; admission of confession reduced to writing by another, but which accused refused to sign, except on advice of counsel, was not erroneous."

See, also, *Bosko* v. *People,* 68 Colo., 256, 188 P., 743; *State* v. *Dierlamm,* 189 La., 544, 180 So., 135; *People* v. *Whalen,* 249 App. Div., 890, 292 N. Y. Supp., 570; *State* v. *Howarth,* 24 Utah, 398, 68 P., 155.

Even were it error to have received the document in evidence, it could not conceivably have been prejudicial. The contents of it was fully told to the jury by officer Todd. The defendant was exhaustively cross-examined with respect to it and in rebuttal officer Staub, the typist, and officers Coleman and Todd were examined with respect to it, item by item. The jury no doubt was thoroughly familiar with every word contained in it. In our opinion, it added nothing of a probative value to the evidence already in the record.

"5. That certain matters transpired constituting misconduct on the part of the prosecuting attorney during his closing argument which was prejudicial to the defendant."

Defendant in her brief makes four separate claims of misconduct on the part of the prosecuting attorney in his closing argument to the jury.

## I.

Comment on failure to prove good character:

The record discloses that the prosecuting attorney in argument mentioned the failure of defendant to offer any witnesses to testify as to her good character and reputation, and it is true none had testified on that subject. The bill of exceptions, however, shows no objection made by counsel for defendant at the time the statement was made with a request to the court to instruct the jury to disregard the same. Any error

committed in connection therewith, consequently, was waived, particularly since, in our opinion, an instruction then and there given to the jury would have cured the prejudice, if any, flowing therefrom. In *Scott v. State,* 107 Ohio St., 475, 141 N. E., 19, paragraph 2 of the syllabus provides:

"2. Improper remarks of counsel for the state during argument, unless so flagrantly improper as to prevent a fair trial, should be at once objected to and exception taken; otherwise error cannot be predicated upon the remarks alleged to have been improper."

II.

Suggesting that defendant might be guilty of a misdemeanor:

The prosecuting attorney in argument said that he was not permitted to ask "if she had been, ever been, guilty of a misdemeanor." This was immediately objected to and the objection was sustained by the court with the remark, "I am going to instruct counsel to keep entirely out of this situation, off the record." Counsel for defendant claims error on the part of the court in not instructing "the jury to disregard such statement" despite the fact no such request was made of it. In our opinion, counsel waived any error by remaining silent thereon.

III.

Arguing on matters not in evidence:

The prosecuting attorney in closing argument said:

"Officer Todd. Officer Todd, if you please, a captain in the United States Army on reserve duty, who faced combat action and offered his life so you and I might live."

Counsel for defendant objected on the ground "that there is no testimony of that." The trial court sustained the objection, saying, "I know of no evidence in the case." Counsel now claims "that the trial court again failed to even instruct the jury to disregard the

statement." We hold that counsel by failing to request the court to give such an instruction, waived it, and consequently find no error in the matter.

## IV.

Appealing to the pecuniary interests of the jury:

The prosecuting attorney argued as follows:

"Well, the taxpayers gave her hospital treatment at City Hospital for $12 didn't they?"

Counsel for defendant in this instance not only objected to the statement (it was admittedly not in evidence) but properly asked the court to instruct the jury to disregard it, which was done. We feel the timely objection and immediate instruction to the jury cured any possible prejudice to the defendant with respect to this matter.

"6. That the verdict of the jury is contrary to the manifest weight of the evidence."

We have carefully read the voluminous record in this case and are unanimously of the opinion that there is substantial evidence in it to sustain the verdict brought by the jury. The verdict is not manifestly against the weight of the evidence.

In *Scaccuto* v. *State,* 118 Ohio St., 397, 161 N. E., 211, the syllabus is:

"In a criminal prosecution, questions of fact are for the jury, and a judgment of guilty will not be reversed as not sustained by sufficient evidence unless the verdict and judgment are clearly and manifestly contrary to the evidence. (*Breese* v. *State,* 12 Ohio St., 146, 80 Am. Dec., 340, approved and followed.)"

"7. That the verdict of the jury is contrary to law."

The defendant moved for a mistrial at the close of the final argument of the prosecuting attorney, "for misconduct of prosecutor in the closing argument," and also pressed for a new trial for misconduct of the prosecutor in her motion for a new trial. We deem it our duty, therefore, to re-examine and analyze the

matters complained of in that regard in connection with the entire record, particularly from the standpoint of whether this defendant had been accorded a fair trial as a matter of law.

In *Sabo* v. *State,* 29 Ohio App., 200, 163 N. E., 496, the syllabus provides:

"If errors occur at the trial of either a civil or criminal case, and no exceptions are taken thereto, a reviewing court cannot reverse solely for such errors; but if a motion for a new trial, containing the ground that the verdict is contrary to law, is overruled, and exception noted, a reviewing court will consider said errors in connection with the whole record, for the purpose of determining whether the justice of the case requires a reversal of the judgment."

The competent evidence in this case is so conclusive of the guilt of the defendant of murder in the first degree that no honest juror could have come to any other conclusion; great provocation; her conversation, before and after the deed, with Mrs. Alexander; her demeanor toward the roomer after the first shots; the uniform course of all bullets; the intoxicated condition of the victim; the condition of the bedroom; the locale of the fatal shot; her exit with a newspaper package; her remarks upon leaving the scene; and her oral admission to the police. Since the verdict is supported by evidence so overwhelming, misconduct of the prosecuting attorney in his final argument, we feel, is reduced to a negligible quantum from the standpoint of its effect upon the verdict in the case. It should likewise be noted that none of the statements of the prosecuting attorney complained of involved language directly bearing upon the guilt of the defendant of the crime charged.

In *State* v. *Navone,* 186 Wash., 532, 538, 58 P. (2d), 1208, it is held:

"Misconduct is to be judged not so much by what

was said or done as by the effect which is likely to flow therefrom. What would be misconduct in one case might very well be held not to be misconduct in another. Each situation involving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed, and that those verdicts which may have been induced by prejudice, or by something beyond the issues, shall not be allowed to stand."

In *Sisson* v. *State,* 19 C. C. (N. S.), 99, 32 C. D., 362, the syllabus provides:

"In a criminal case, where it is plain from the evidence that the jury could not have reached any conclusion other than that which was reached, a verdict will not be set aside for reprehensible misconduct of the prosecuting attorney."

Keeping in mind the above factors, together with the fact that the jury was explicitly instructed by the trial court not to consider the arguments of counsel as evidence in the case, we unanimously conclude that the verdict of the jury is not contrary to law.

Section 13449-5, General Code of Ohio in part reads:

"No motion for a new trial shall be granted or verdict set aside * * * for the admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

The judgment of the trial court, therefore, should be and it is affirmed.

*Judgment affirmed.*

Hurd, P. J., and Skeel, J., concur.