## THE STATE v. FELTES.

1. **Criminal Law:** EVIDENCE : CONFESSIONS WHEN INTOXICATED. Confessions made by one when intoxicated are admissible, but evidence of the condition of the party making them is competent to impair or destroy their effect. The fact that such evidence was elicited only upon cross-examination was immaterial.

2. ———: THEORY OF CRIME : ADMISSION. The propounding of a theory of the crime by the defendant is not an admission, but the jury are entitled to consider it for the purpose of determining whether it is so strange and improbable as to evince a design to mislead.

3. ———: EVIDENCE. It is competent to show that the defendant, before his arrest, admitted that he had made different statements about the disappearance of the deceased, and that he had "lied about it."

4. ———: ———: MENTAL CONDITION WHEN CONFESSION IS MADE. When a confession is shown and there is evidence tending to prove that defendant, at the time of the confession, was laboring under delirium tremens, or was otherwise insane, the opinion of an expert may properly be taken upon the defendant's mental condition, as indicated by the proven facts.

5. ———: ———: CIRCUMSTANCES IN CORROBORATION. Facts considered which were *held* to sustain an alleged confession that the defendant had committed the crime of murder.

*Appeal from Dubuque District Court.*

SATURDAY, JUNE 14.

THE defendant was indicted for the crime of murder in the first degree, and convicted of manslaughter, and sentenced to the penitentiary for eight years. He appeals.

*A. S. Blair,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

ADAMS, J.—I. The defendant is charged with having murdered his own son, Peter Feltes, about eleven or twelve years of age. The boy disappeared the last of April, 1876, and was not seen again alive. The corpse of a child of apparently about that age was disinterred near the defendant's farm, in the northern part of

Delaware county, in June, 1877. It was found in a shallow grave, without a coffin, in a field that had been cultivated the preceding year. Such changes had taken place in it by decomposition that it was not possible to identify it from its appearance. Even the sex was indicated by nothing but the clothing. A bullet was found in the skull. A fracture was also found in the skull, and it was of such a character as to indicate that it was produced by means other than the bullet. The identification of the body rests upon circumstances and what the defendant said about it. His statements also constitute the principal evidence tending to establish his guilt. The defendant was a person of intemperate habits. Upon the morning upon which the boy disappeared the defendant charged him with having been to Manchester and forbidden the saloon keepers there to sell him liquor. He told him that he must go to Manchester with him that day and hear what the saloon keepers had to say about it. This was said at the breakfast table. The boy made no reply, but soon arose and went out. The defendant soon followed him. The boy never returned. The defendant was suspected of having murdered him. After a few weeks or months he became talkative in regard to the disappearance of the boy, and especially when he was under the influence of liquor. He claimed that a few days after the boy disappeared he found him dead, and that he buried him, and concealed the death and burial because his wife was in a critical condition of health. He offered to point out the place where he was buried, and did point out the place where the body of a child was disinterred. He was present at the disinterment, and said that the body was that of his son Peter.

The first error assigned is upon the admission of the testimony of one Emma Squires. She was called to testify to certain confessions of the defendant. His counsel objected upon the ground that he was, at the time of the alleged confession, under the influence of intoxicating liquor, and was affected by delirium tremens, or otherwise insane, and they

asked to be allowed to show by the witness herself, and other witnesses, that such was the fact, before she should be allowed to testify in regard to the confession, to the end that the court might sustain their objection to her testifying in regard to the confession, if the court should be satisfied that the defendant was affected with delirium tremens, or otherwise insane or, at least, if her testimony was to be received it should be after the jury had been made acquainted with the defendant's condition.

The court overruled the objection, denied the request and allowed the witness to testify. Her testimony was that in June, 1876, while riding along the road not far from the defendant's farm, she heard the defendant in the road, a long way off, making a great outcry. Upon coming up to him she asked him what was the matter, and he answered that the spirits had hold of him. She asked him what spirits, and he said "Peter's." She asked him what he had done with his little boy that his spirit should haunt him, and he said he killed him. She asked how he killed him, and he said he shot him and cut his throat. He asked her to take the spirits away from him. Upon cross-examination she testified that she thought him intoxicated; that he was without any hat, and that the team which he had been driving had left him and gone on.

Evidence that the defendant, at the time of the alleged confession, was intoxicated or insane, was proper to impair or destroy the effect of the confession. The defendant was allowed to introduce such evidence upon cross-examination. But he complains that he should have been allowed to introduce it first, for the reasons above set out. In our opinion the court did not err. It was for the jury to determine what weight should be given to his confession, in view of his mental condition, as shown. *Commonwealth v. Howe,* 9 Gray, 110. The court, therefore, could not properly have excluded evidence of the confession. Nor do we think it was the defendant's right to show his condition first, by way of preparing the

The State v. Feltes.

mind of the jury against any undue impression from the evidence of the confession. The time when the jury was made acquainted with it must, we think, be deemed immaterial. They must be presumed to have given the evidence in relation to it its due weight.

II. One Trick was introduced as a witness by the State for the purpose of showing that in a conversation with the defendant two theories were propounded by the defendant in regard to the cause of his son's death. The defendant objected to evidence in regard to the theories which he had propounded, because the propounding of a theory is not an admission, and evidence of it is immaterial. The court overruled the objection, and the witness testified that the defendant had two theories: One was that his son might have been killed by the bursting of a gun in the hands of another boy while hunting with him, and the other was that one Zimmer might have dealt foully with him.

*2. ——: theory of crime: admission.*

The propounding of a theory is not an admission or confession. It is at most a mere circumstance. In the theories propounded by the defendant, taken by themselves, we see very little, if anything, tending to criminate him. If they were so strange or naturally improbable as to evince insincerity and a design to mislead, the propounding of them would be a circumstance against him. As to whether there is such natural improbability in them we need not consider. The materiality of the testimony rests upon a different ground. It was shown in evidence that the defendant stated to one Tillet that his son went west with some movers, and while walking by the side of a team of horses was kicked by a horse and killed. Now, if the boy was killed by the kick of a horse, he was not killed by the bursting of a gun. The former appears to have been stated as a fact. It should have excluded the latter as a theory. The discrepancy, however, was subject to explanation. The theory might have been propounded at a time when he was not credibly informed of anything inconsistent with it. The jury was entitled to consider

The State v. Feltes.

his statements in connection with the other evidence in the case. If they found an irreconcilable inconsistency it would be a circumstance against him. Roscoe on Crim. Ev., 712.

While this is undoubtedly the law, it is proper to observe that some caution should be exercised, lest too much importance should be given to such a circumstance. An innocent person finding himself suspected might make false representations to allay suspicion. Such instances have occurred.

III. One Canfield was introduced by the State as a witness who testified that he went to the defendant's house, and

4. ———: evidence. talked with him about the disappearance of the boy. He testified that he told the defendant that there were considerable many rumors around the county about him; that some thought that he killed the boy; that as he would have to give himself up to the officers he might as well tell all about it; that if he did not there would be trouble ahead, but that if he did tell and was innocent his friends would stand by him; that thereupon the defendant said, "I have lied—I have told a good many stories;" that the defendant then proceeded to give an account of his finding the body and burying it, and concealing the matter from his wife on account of her being in a critical condition of health.

The defendant objected to this testimony on the ground that the witness showed that the confession was not voluntary. Whether the statement was voluntary we need not consider. The statement was not a confession. It contains an admission that he had lied about the boy's disappearance. If he had lied about it, it was a circumstance against him. The defendant's admission that he had lied was evidence that he had lied. The testimony was proper.

IV. One Zimmer was introduced as a witness by the State, who testified that he was living with the defendant at the time the boy disappeared; that he was present at the breakfast table that morning when the defendant told him that he must go with him to Manchester that day and hear what he had said to the saloon keepers against the defendant not

The State v. Feltes.

getting any more drink. The witness further testified that there was no difficulty between the defendant and the boy that morning.

The counsel for the State then asked a question in these words: "Didn't Feltes tell the boy at the table that morning, while you and the family were there, that the boy Peter had ·been to Manchester, and forbid the saloon keepers from letting him (Feltes) have any more liquor, and he would see who was boss, or something to that effect?" The defendant objected to the question upon the ground that the State could not be allowed to impeach its own witness. The court overruled the objection, and the witness answered: "Yes, sir; he said that, and he added still to that, 'I'll fix you.' He put that all in."

We see nothing in this calculated to impeach the witness, or even scarcely calling for a rectifying of what he had said. It is true he had previously said that there was no difficulty between Feltes and the boy that morning. In one sense there was. But the evidence shows that the boy said nothing; that he merely arose from the table and went out from the house. There was no altercation. It is easy to understand in what sense the witness meant that there was no difficulty between them. The question is manifestly objectionable as leading, but it was not objected to upon this ground. We think that the objection made was properly overruled.

V. The defendant, for the purpose of showing his mental condition at the time of the alleged confession testified to by Mrs. Squires, introduced witnesses who showed that prior to that time he had been exceedingly intemperate. The defendant then called one Dr. Hay as an expert in nervous diseases, including delirium tremens and other forms of insanity. He was asked in substance what mental condition was indicated in the defendant at the time he was seen by Mrs. Squires, supposing his conduct, language and appearance to be such as described by her, and supposing his habits to be such as shown in regard

4. ——: ——: mental condition when confession is made.

to drink. The counsel for the State objected to the question as incompetent and immaterial to the main issue in the case. The counsel for the defendant then stated that they proposed to show by the witness that the defendant, at the time of the alleged confession, was laboring under delirium tremens. The counsel for the State repeated their objection, and the objection was sustained. In this we think that the court erred. Where a confession is shown, and there is evidence tending to show that the defendant, at the time of the confession, was laboring under delirium tremens, or was otherwise insane, we think that the opinion of an expert may properly be taken upon the defendant's mental condition as indicated by the proven facts. We see no reason why his insanity may not be established by any kind of evidence which is employed in any case to establish such a fact.

VI. The defendant insists that there is no evidence that the crime was committed except the alleged confession.

5. ——: ——: That alone would be insufficient. Code, § 4427. circumstances in corrobora- But we think there is other evidence. The fact tion. that the defendant told false stories in regard to the boy's disappearance is a circumstance tending to establish his guilt, independently of his confession of guilt. The fact that the boy mysteriously disappeared, and a few months afterward the body of a child, apparently of the same age, was found in a shallow grave near the defendant's farm, is evidence tending to show that the body was that of the boy. The fact that the boy was buried in such a grave and in such a place, and a bullet found in the skull, and the skull fractured as by a blow, is evidence tending to show that the boy was murdered. The fact that the defendant had knowledge of the grave when it was unknown to others, and could point it out in a neighbor's field that had been plowed and sown and reaped, connects him with the burial; and the indecent and secret character of the burial points to him as the murderer, if the boy was murdered.

The theory of the defendant's counsel is that the boy com-

mitted suicide. This theory, it is said, accounts for the bullet in the skull; the shallow burial in a field afterward plowed and reaped, it is said, accounts for the fracture; and the critical condition of the defendant's wife accounts for his concealing the burial. These considerations are urged with great force, and it is not to be denied that they are entitled to much weight. But they are not of such weight as to justify us in saying that the verdict is without support.

Many errors are assigned which we have not specifically noticed. Some of them, we think, are covered substantially by the views which we have expressed. Some of them involve questions which will not probably arise again. As to the others we think we may say that if there is error it is error without prejudice. For the error in excluding expert testimony in regard to the defendant's mental condition at the time of the alleged confession the case must be

REVERSED.