[No. 31373.   Department One.   November 9, 1950.]

THE STATE OF WASHINGTON, *Respondent*, v. ARTHUR AMUNDSEN, *Appellant*.[1]

[1]Reported in 223 P. (2d) 1067.

*Futter, Merrick & Merrick* and *Rummens, Griffin & Short,* for appellant.

*Wm. J. Gaffney,* for respondent.

DONWORTH, J.—The defendant, Arthur Amundsen, was charged by information with the crime of indecent assault as defined by Rem. Rev. Stat. (Sup.), § 2442 [P.P.C. § 118-195] in that he did take indecent liberties with a ten-year-old girl. A trial before a jury resulted in a verdict of guilty. A motion for a new trial was made by the defendant and was denied, and he was given a maximum sentence of twenty years confinement in the penitentiary as is required by statute. From the judgment and sentence pronounced against him upon the verdict the defendant has appealed.

Since there is no contention that there was not sufficient evidence introduced by respondent to sustain the verdict of the jury and the judgment entered thereon, it is not necessary for us to discuss the evidence.

Appellant has made nine assignments of error but we find it necessary to pass upon only two of them.

Appellant contends that he should be granted a new trial on account of the prejudicial interjection, by two witnesses, of an alleged admission by appellant of lewd and lascivious conduct constituting another crime, of which there was no showing that appellant had been convicted.

On direct examination of the father of the prosecutrix, he testified:

"Q. Was there any further conversation that night at supper with Mr. Amundson, if you recall? A. He did state— he told us a story about standing up a colored woman down by the viaduct. MR. MERRICK: That is highly prejudicial, and move it be stricked and the jury instructed to disregard it. THE COURT: Yes, I think the last statement of the witness was voluntary and will be stricken."

Subsequently, while the mother of the prosecutrix was on the stand, the following testimony was elicited:

"Q. Do you recall anything else Amundson may have said when he came back that evening? A. He talked about—told me some juicy story about some colored woman—standing

up some colored woman—Mr. Merrick: I object to that. Q. When Mr. Amundson came back to the house that evening, did he say anything in your presence relative to the colored —Mr. Merrick: Your Honor — A. Well, that is — The Court: Just a moment, Mrs. ——. Counsel may ask his question as a direct question or in the alternative. Q. Mrs. ——, did or did not Mr. Amundson at supper time, say anything in your presence relative to — Mr. Merrick: Your Honor, this is leading. This is very vital. The Court: Counsel may state it as a direct question. Mr. Merrick: It has been asked and answered twice. The Court: Over-ruled, counsel may restate his question. Q. At supper time, at your home, that evening, did or did not Mr. —— [Mr. Amundsen] state anything in your presence relative to any of your girls?"

■ This court has held many times that a defendant must be tried for the offense charged in the information, and that to introduce evidence of prior acts of misconduct which have not resulted in a conviction by a court of law is grossly and erroneously prejudicial. *State v. McVeigh,* 35 Wn. (2d) 493, 214 P. (2d) 165; *State v. Goebel,* 36 Wn. (2d) 367, 218 P. (2d) 300.

There are certain recognized exceptions to the above general rule (see *State v. Goebel, supra*), but respondent does not contend nor do we believe that the above-quoted testimony falls within any of them. Respondent's position is that prejudicial error was not committed because the state voluntarily abandoned further inquiry of the prosecutrix' mother after appellant's counsel objected to this testimony.

Perhaps it is reasonable to assume that the answer of the child's father was unexpected since a witness oftentimes in giving his testimony volunteers statements not pertinent to the issue. The trial court, upon appellant's motion, struck the objectionable testimony but failed to comply with appellant's request by instructing the jury that it was not competent evidence and was to be disregarded by them.

■ Whether this failure to so instruct the jury constituted reversible error we need not decide because the prosecuting attorney did not let the matter rest there but deliberately attempted to elicit further reference to this alleged in-

cident while examining the child's mother. Even though the trial court had overruled appellant's objection to this testimony, the prosecutor immediately changed his line of questioning but the damage had already been done. In our opinion this conduct of the prosecuting attorney in asking a second witness concerning this matter was highly prejudicial to the rights of appellant.

In passing upon appellant's motion for a new trial the court pointed out that in its instructions to the jury at the close of the case they were told that they must not consider any testimony that had been stricken out by ruling of the court during the trial. This was considered by the court to be sufficient to correct the error assigned by appellant in regard to the above-quoted testimony. We cannot concur in this view.

The only reasonable inference that the jury could draw from such testimony was that the appellant was guilty of indecent conduct with a negro woman and was boasting of it in the presence of the prosecutrix' family. To thus stress this alleged act of misconduct (which had no logical connection with the crime charged) constituted prejudicial error and entitled appellant to a new trial.

Appellant makes the further contention that the trial court erred in denying appellant's motion for a new trial when it appeared that the jury, after retirement to consider its verdict, had illegally separated and a portion of them had been placed in custody of one who was not a sworn bailiff.

Attorney for appellant in his affidavit in support of a new trial stated:

". . . that on November 18, 1949, after the above cause had been submitted to the jury and after the jury had retired to consider its verdict, and after the bailiffs had been duly instructed and sworn to keep the jury together and not allow its members to separate, said bailiffs did allow four members of the jury to separate from the others and ride in an automobile from the Court House to a restaurant and return, a distance of one half mile each way, in charge of a person who was not a sworn bailiff and that during said trips no bailiff was in charge of or present with said jurors."

Upon the hearing of appellant's motion for a new trial, a bailiff was called as a witness by the court and, in response to questions put to him by the court, testified that the jury had been transported to the restaurant and back to the court house in three cars, one being in charge of a deputy sheriff and not a bailiff. This bailiff was also questioned by the prosecutor and his subsequent testimony was confused as to the particular case in which this separation occurred. However, he knew that a Mrs. Greenwood (who was unable to walk) was a juror in the case in which the jury became separated. The trial court then stated: "She served as a juror in this case, I know." Apparently, there was no doubt in the court's mind that the separation occurred in the instant case.

At the conclusion of the bailiff's testimony, the court in denying appellant's motion for a new trial commented as follows:

"THE COURT: Well, I don't think there is enough one way or the other. I do not believe your affidavit is either substantiated or denied to the extent where there would be any prejudice shown as a matter of fact. I think with the further showing of the defendant of an action act that would constitute prejudice under the circumstances, it is perfectly natural to carry the jury to and from dinner, and it is perfectly natural to utilize the sheriff's department to carry them to and from dinner. While it is unfortunate that such a circumstance and condition arose here and if it it, and if such conditions arose and the jury was permitted to separate under those conditions, it is extremely unfortunate in that it reflects in the record, it could have been avoided and perhaps should have been avoided but with no more showing of prejudice than has been made by the defendant on a prejudicial fact of such separation, if such separation took place, the Court does not feel on that ground, he can sustain or grant the Motion for a New Trial, so all grounds for the Motion for a New Trial is denied."

We are of the opinion that there was a sufficient showing that the jury was separated *after* the case was submitted to them and that the burden was placed upon respondent to rebut the presumption of prejudice arising from a vio-

lation of the provisions of Rem. Rev. Stat., § 349 [P.P.C. § 99-51], reading as follows:

"After hearing the charge, the jury may either decide in the jury-box or retire for deliberation. If they retire they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more officers, until they agree upon their verdict, or are discharged by the court. The officer shall, to the best of his ability, keep the jury thus separate from other persons, without drink, except water, and without food, except ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed upon."

■ The majority rule is that a *prima facie* presumption of prejudice arises from the fact of separation after submission of the case to the jury and the burden is upon the state to show that no prejudice did actually result. See notes in 34 A. L. R. 1215 and 79 A. L. R. 838.

In South Dakota, which has a statute similar to § 349, quoted above, the supreme court of that state, in *State v. Smith*, 56 S. D. 238, 228 N. W. 240, granted a new trial under circumstances similar to the facts of this case. In that case, the sheriff and one of the jurors were together and apart from the other jurors for a period estimated variously to be between four and fifteen minutes. In granting the accused a new trial because of this separation the supreme court said:

"It further appears from the record that the sheriff was not sworn as a bailiff, and was not in any manner in charge of the jury, which was in the custody of two bailiffs duly sworn for that purpose.

"The weight of authority with reference to the effect of the unauthorized separation of a jury in a criminal case, other than misdemeanor, after submission and before agreement, is stated in a careful case note in 34 A. L. R. p. 1115, at page 1215, in the following language:

" 'In a prosecution for a felony, the courts, generally, are agreed that where the jury has separated while deliberating on their verdict, under such circumstances as to make it

reasonably appear that they might have been tampered with, prejudice is presumed, and the burden of showing that the defendant was not, in fact, prejudiced thereby, is on the prosecution. Unless the state shows non-injury to the defendant, a new trial will be ordered.' The rule in this state was established by the case of *State v. Church* (1895) 7 S. D. 289, 64 N. W. 152, 153, as follows:

" 'We believe the true and only safe rule to be that, where the separation is such that one or more of the jurors might have been improperly influenced by others, and there is nothing reliable to show that such influence has not been exercised to the prejudice of the accused, the verdict shall be vacated, and the case be retried.'

"We think the rule announced in *State v. Church* is not substantially different from the general rule as above set out. The importance of preserving the purity of jury trials and guarding them from all improper influence has been several times emphasized by this court. See *Peterson v. Siglinger*, 3 S. D. 255, 52 N. W. 1062; *State v. Ferguson*, 48 S. D. 346, 204 N. W. 652.

"The sheriff in the instant case was one of the witnesses for the state. He was not a bailiff, and his official capacity as sheriff certainly gave him no right or authority to mingle in any fashion with the jurors or to have anything whatever to do with them. The separation of the jury is conceded, and that the juror Schnoose and the sheriff were together and apart from the other jurors for a period variously estimated as from four to fifteen minutes is not questioned. The impropriety of such conduct is beyond doubt. As to what took place between the sheriff and the juror during that interval there is a square conflict."

This court must, in the absence of any attempted showing by respondent to the contrary, presume that prejudice preventing appellant from having a fair trial did result from this separation of the jury in this case. Therefore, appellant is also entitled to a new trial on this ground.

The remaining errors assigned by appellant have been considered and we find that either appellant did not object during the trial to the matters complained of or that they involve matters which are not likely to occur upon a retrial. It is, therefore, not necessary to discuss them.

We hold that appellant should have been granted a new

trial upon the two grounds stated above and that the denial of appellant's motion therefor was erroneous.

For the reasons stated herein, the judgment and sentence of the trial court is reversed and the case remanded with instructions to grant appellant a new trial.

BEALS, SCHWELLENBACH, GRADY, and HILL, JJ., concur.

