STATE OF IOWA, appellee, v. MICHAEL JAMES FAUGHT, appellant.

## No. 50765.

(Reported in 120 N.W.2d 426)

MARCH 12, 1963.

Mahoney, Jordan, Statton & Smith, of Boone, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Stanley R. Simpson, County Attorney, and T. W. Doran, Special Prosecutor, of Boone, for appellee.

GARFIELD, C. J.—Defendant, Michael James Faught, has appealed from his conviction of second-degree murder.

On July 9, 1961, about 7:30 a.m., the body of a Mrs. Zenor was found in the vegetable room in the basement of the Hemlock building at the Woodward State Hospital and School. She was a cook in the building. The handle of a butcher knife protruded from her chest. Its 8-inch blade was inside the body and had almost completely severed the aorta and windpipe. She had bled to death within a minute or two after she was stabbed.

Defendant, then 17, was a patient and student at the Woodward institution, maintained by the State for the treatment of epileptics and training of the mentally retarded (chapter 223, Codes, 1958, 1962). Defendant's mother testified he has had

epileptic seizures since he was about seven. His father fixed such age at 11. He was also mentally retarded. On July 9 defendant was one of a "kitchen crew" of six in the building. One of his duties was to peel potatoes and cut up other vegetables in the basement. He had gone there that morning to do such work, taking with him the knife with which Mrs. Zenor was stabbed.

Defendant promptly admitted to different employees at the Woodward School that he stabbed Mrs. Zenor. These admissions were also made to the sheriff and other law enforcement officers. He also dictated and signed that same afternoon a written confession of the crime.

Defendant was charged by county attorney's information with murder in violation of section 690.1, Codes, 1958, 1962. Able counsel was appointed to defend him. At his trial in March 1962 the jury found him guilty of murder in the second degree. He was sentenced to the state penitentiary at Fort Madison for a term *not to exceed* 50 years. Upon this appeal defendant has assigned three errors.

Sufficiency of the evidence to support the verdict is not challenged. Nor could it be. No detailed recital of the facts is called for. Defendant told different members of the staff at Woodward he grabbed decedent around her neck with his left arm as she emerged from a door in the basement, picked up the butcher knife from the table where he was cutting up cabbages, and with his right hand plunged the knife into her chest. His written confession says he "grabbed Mrs. Zenor and stabbed her. That was all there was to it." Decedent was a frail arthritic, five feet, one or two inches tall, who weighed 110 to 115 pounds.

At the trial defendant admitted he signed the confession, told the officers about what is in it, and told "a lot of people" he killed Mrs. Zenor. As a witness, however, he denied the killing. His explanation for signing the confession was that about two months previously he had been wrongfully accused of cutting three boys' throats and was tired of being accused of things he did not do.

We consider now the three assigned errors in the order in which they are argued.

I. Defendant's first assignment is that the court erred in limiting his examination of the witness Dr. William Wildberger as to defendant's mental age and brain damage.

Before trial defendant filed written notice under section 777.18, Codes, 1958, 1962, that he proposed to show insanity as a defense, setting forth names of witnesses on such issue. Doctor Wildberger, acting assistant superintendent and clinical director at Woodward, was not one of those so named. However, defendant called the doctor as a witness and asked him if he could tell from his records what defendant's mental age would be on July 9, 1961. The State objected on the ground the witness' name was not included in the written notice. Defendant's counsel stated he was not attempting to prove the defense of insanity but that the evidence was admissible with respect to the voluntary character of the confession and defendant's ability to distinguish when making it. The objection was overruled and the witness said he did not have a record of defendant's mental age on July 9.

Counsel later asked Doctor Wildberger if defendant had brain damage by reason of epilepsy. An objection to the question on the ground the witness' name was not included in the notice above referred to was sustained. Defendant then examined the doctor outside the jury's presence. Counsel stated this was in the nature of an offer of proof. The witness was reluctant to answer the question regarding brain damage of defendant. He insisted counsel say what he meant by brain damage and counsel insisted the witness say what he meant by the term. The doctor was next asked, "On March 9 [1962] did you not tell me by letter that defendant appeared to be brain damaged?"

Doctor Wildberger answered that the statement referred to was an excerpt from a letter to a doctor in Iowa City. Asked what he meant by the statement, the witness replied he was indicating to the other physician that "in my opinion this boy was having problems that in a broad sense was located in his brain area and in this broad sense he could be said to be suffering from brain damage." Finally the witness was asked if he did

not have a report in his files from another doctor, dated January 6, 1960 (18 months prior to the alleged murder), suggesting defendant should not have been placed in the Woodward hospital. Defendant's counsel interrupted the answer and announced that was the extent of the offer of proof.

The whole examination in the jury's absence was more extensive than above set out. The only answer relied on now is the one just quoted. The court indicated the entire offer was "a left-hand attempt to get into the record evidence which should have been put in under the statute [777.18] on the ground of insanity." Also that the court did not understand what it was proposed to show—it was speculative and too indefinite. To this defendant's counsel responded: "I don't understand the answers anyway, so I can appreciate the information the doctor was giving wouldn't have been much help in clarifying the jurors' minds on the issues presented."

The court may well have understood this last statement as a virtual withdrawal of any offer of proof from this witness. In any event it indicates counsel's agreement with one ground on which the court thought the offer should be excluded.

Further, the only excluded answer defendant now thinks should have been received relates to the contents of a written instrument which was not produced or accounted for. The objection that the questions referring to the statement in the letter to the Iowa City doctor—and to counsel—did not call for the best evidence could rightly have been interposed. We have often held that if evidence is properly excluded on any ground the ruling will be upheld even though the proper ground for exclusion was not urged in the objection to its admission. Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W. 2d 85, 94, and citations; Kent State Savings Bank v. Campbell, 208 Iowa 341, 344, 223 N.W. 403, and citations.

The reason for the rule just mentioned is that it would be futile to grant a new trial upon such a ground. It should fairly be presumed that upon the new trial proper objections would be interposed to admission of the excluded evidence. Kent bank case, supra.

We find no merit in the first assigned error.

II. The second assignment is that instructions 16, 24 and 25 to the jury erroneously limited its consideration of defendant's mental condition to the issue of intent to commit the crime charged and did not allow the jury to consider such condition with respect to the voluntary character of defendant's verbal admissions and the confession.

Instruction 16 states the circumstance defendant was an inmate at Woodward and mentally retarded is in and of itself no defense to the charges against him. "It bears only upon the question of intent as defined in the instructions and will be considered for that purpose only, if it does so in fact bear thereon."

Instruction 24 states that before verbal statements made by defendant outside of court could be considered it must be found they were voluntary, without inducement, promise, threat or coercion. Instruction 25 sets out the requirement of Code section 782.7 that the confession of defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof the offense was committed. Instruction 26 is similar to 24 but deals with the requirement that the written confession must have been voluntary. No objection or exception was taken to 24, 25 or 26. All that is said in argument here about them is that they do not state defendant's mental condition could be considered in determining the weight of the oral admissions or written confession.

Defendant objected and excepted to instruction 16 in that it told the jury the fact defendant was an inmate at Woodward and mentally retarded could be considered only on the question of intent, whereas such fact should also have been considered with respect to the weight and voluntariness to be given the confession and other incriminating statements of defendant.

There is much evidence defendant was mentally retarded, at least in the broad sense. Although 17 he had attained the educational level of only fourth to fifth grade. One witness considered him borderline retarded and borderline normal. Another called him low borderline. Still another said defendant was definitely borderline and mentally retarded.

The State's answer to defendant's claim of error in giving instruction 16 is that in the absence of a request it was not

necessary to instruct that evidence of defendant's mentally retarded condition could be considered on the voluntariness and weight to be given the confession and verbal admissions. Also that where a defendant testifies in court his confession is not rendered inadmissible by the fact he is mentally retarded.

We entertain no doubt defendant's written confession was admissible in evidence. We do not understand it is claimed it should have been excluded from jury consideration. The State made an affirmative showing it was given voluntarily, without inducement, promise, threat or coercion. There is little if any contrary evidence.

An annotation in 69 A. L. R.2d 348, 350, on "Mental subnormality of accused as affecting voluntariness or admissibility of confession" states: "The law * * * is relatively clear and may be summarized as follows: mental subnormality on the part of one confessing to a crime does not of itself deprive the confession of voluntariness or bar its admission in evidence, so long as the subnormality has not deprived the person in question of the capacity to understand the meaning and effect of the confession. But mental subnormality is a factor to be considered in determining the issues of voluntariness and admissibility, and, where accompanied by other factors indicative of an absence of voluntariness, will require that the confession be excluded."

To like effect is 23 C. J. S., Criminal Law (1961), section 828, pages 226, 227: "* * * mental incapacity which does not render a person incompetent as a witness generally will not require the exclusion of his confession.

"* * * generally a confession will not be excluded on the sole ground that accused is mentally weak, * * *."

But these statements do not answer defendant's contention in both the trial court and here that evidence he was mentally retarded was properly to be considered on the weight to be given the confession and verbal admissions.

Our decisions amply support the State's contention that in the absence of a request it is ordinarily not necessary to instruct on the purpose for which certain evidence is to be considered or the effect to be given it. State v. Baker, 246 Iowa

215, 228–232, 66 N.W.2d 303, 310–312, and many citations; State v. Perry, 246 Iowa 861, 865, 866, 69 N.W.2d 412, 414, 415, and citations; State v. Jensen, 245 Iowa 1363, 1370, 1371, 66 N.W.2d 480, 484; State v. Anderson, 240 Iowa 1090, 1095–1099, 38 N.W. 2d 662, 665–667, and citations. See also 23A C. J. S., Criminal Law, section 1325(5).

Since defendant requested no instruction to the effect evidence of defendant's mental condition could be considered on the question of weight to be given his confession and verbal admissions, the court was not required to instruct on the purpose for which such evidence should be considered. At the conclusion of the evidence defendant's counsel advised the court he had no requested instructions. We are satisfied the court was not required, there being no request, to give instruction 16. *But the instruction was given* and expressly limited the jury's consideration of the evidence of defendant's mentally retarded condition to the question of intent. The instruction precluded consideration of the evidence for any other purpose, including the weight to be accorded the confession and admissions.

Defendant raised the objection now urged to instruction 16 in his motion for new trial as the statute applicable to criminal cases permits. Code section 787.3, paragraphs 5 and 7; State v. Linzmeyer, 248 Iowa 31, 34, 79 N.W.2d 206, 207, and citations; State v. Anderson, supra, 240 Iowa 1090, 1092, 1093, 38 N.W.2d 662, 663, 664. Of course in civil cases objections to instructions must be made before they are read to the jury. Rule 196, Rules of Civil Procedure.

■ We are clear that evidence of a defendant's mental weakness, even though short of insanity and not affecting admissibility of a confession, is proper for the jury to consider in determining the weight and effect to be given the confession or other incriminating statements. Vinzant v. State, 28 Ala. App. 220, 180 So. 736; People v. Boyington, 3 Cal.App.2d 655, 39 P.2d 867; Ingles v. People, 92 Colo. 518, 22 P.2d 1109, 1113; State v. Stewart, 238 La. 1036, 117 So.2d 583, 587; People v. Joyce, 233 N. Y. 61, 134 N.E. 836, 839, 840; 23 C. J. S., Criminal Law, section 828, page 228; 20 Am. Jur., Evidence, section 523. See

also Shellenberger v. State, 97 Neb. 498, 150 N.W. 643, L. R. A. 1915C 1163; State v. Lewis, 50 Nev. 212, 255 P. 1002, 1009, Taylor v. State, 27 Okla. Cr. 165, 225 P. 988, 992.

"* * * evidence of such mental calibre or condition is competent and material * * * in determining the weight, credibility, and effect to be given the confession." 23 C. J. S., Criminal Law, section 828, page 228.

State v. Feltes, 51 Iowa 495, 497, 1 N.W. 755, and State v. Hiatt, 231 Iowa 655, 659, 660, 1 N.W.2d 734, 736, are also in point on principle, although the mental condition of accused in those precedents was mainly due to use of liquor. The Hiatt opinion approves this from Underhill's Criminal Evidence, 4th Ed., 538, section 272: " 'A confession is not inadmissible merely because made while accused was under the influence of alcohol, but this fact may be considered by the jury in determining the weight and credibility of the confession; * * *.' "

The Hiatt decision also quotes with approval from State v Feltes, supra: "Evidence that the defendant, at the time of the alleged confession, was intoxicated or insane, was proper to impair or destroy the effect of the confession. * * *. It was for the jury to determine what weight should be given to his confession, in view of his mental condition."

Many other decisions to the effect intoxication of accused at the time of making a confession goes to the weight to be given it and is for consideration of the jury are cited in Bell v. United States, 60 App. D. C. 76, 47 F.2d 438, 74 A. L. R. 1098, and annotation 1102. See also Lindsey v. State, 66 Fla. 341, 63 So. 832, 50 L. R. A., N. S., 1077, Ann. Cas. 1916C 1167, and Note 1168.

We must hold instruction 16 was error, inadvertent no doubt, in limiting the jury's consideration of evidence of defendant's mentally retarded condition to the question of his intent. The jury was also entitled to consider such evidence on the important question of weight to be given the written confession and other incriminating statements of defendant. His objection and exception to instruction 16 on this ground must be sustained. Since the court instructed on the purpose for which the evidence of mental condition could be considered defendant was

entitled to a correct instruction on the matter. Much of the State's evidence consists of defendant's incriminating verbal statements and written confession.

The error in giving instruction 16 is not obviated by other instructions, if that were possible, on the theory that instructions as a whole must be considered. No other instruction covers the point raised by defendant's objection to 16. And if it did it could not be known whether the jury followed the correct instruction or the incorrect one. State v. Wilson, 234 Iowa 60, 90, 11 N.W.2d 737, 752; Clarke v. Hubbell, 249 Iowa 306, 314, 315, 86 N.W.2d 905, 910; Wheatley v. Heideman, 251 Iowa 695, 713, 102 N.W.2d 343, 354, and citations in these cases.

III. Defendant's remaining assigned error is the overruling of his motion for new trial based in part on the fact the sheriff, his deputy Camelin and another deputy transported the jurors, during their deliberations, in three automobiles from the jury room to a restaurant where they all had supper together; the three drivers visited while waiting for the meal to be served and while eating; after the meal the jurors were returned to the courthouse by the same drivers; the sheriff and deputy Camelin were key witnesses for the State upon the trial.

Defendant contends these facts disclose a separation of the jury without leave of court, after retiring to deliberate upon their verdict, which is made a ground for new trial by Code section 787.3, paragraph 3. It is pointed out also the oath required by section 780.37 to be administered to the officer placed in charge of the jury during deliberations was not administered to the sheriff or his deputies. All of which, it is said, deprived defendant of a fair trial.

The State's principal response to this claim of error is that it was not shown defendant was prejudiced by the occurrence on which it is based and the trial court had discretion in passing on this ground of the motion for new trial.

A number of our precedents, under varying circumstances giving rise to a claim of misconduct of the jury, the officer in charge thereof or others, hold a conviction will not be reversed on such ground unless it probably influenced or prejudiced the jury against defendant and also that the trial court

has discretion—although of course not unlimited—in passing on such a claim. State v. Poffenbarger, 247 Iowa 552, 556, 557, 74 N.W.2d 585, 587, and citations.

We do not propose to review our decisions bearing on this assigned error. We are agreed that upon a retrial any such occurrence must be avoided. The sheriff was a very important State witness. He was in charge of the investigation of this homicide and instrumental in securing much of the evidence presented at the trial. We are told he was the only State witness permitted to remain in the courtroom throughout the trial. This may have been because defendant was then in custody. In any event the sheriff was closely identified with the prosecution. Deputy Camelin was also an important State witness.

No criticism of the sheriff is intended. Rather he is to be commended for his prompt and efficient investigation of this crime. Defendant concedes the sheriff committed no intentional wrong in doing what is complained of and this is doubtless true. The court may have directed the sheriff to transport the jurors to the restaurant although the record does not show it. If such direction was given it was a mistake.

Defendant was on trial for his life. It was imperative that the verdict be based solely on the evidence and the court's instructions. To permit the sheriff and his deputies, under the facts here, to associate with the jurors after the case was submitted, before, during and after the evening meal, was not conducive to this end.

Defendant's third claim of error seems to have greater merit than similar claims in State v. Amundsen, 37 Wash.2d 356, 223 P.2d 1067, 21 A. L. R.2d 1082, 1086–1088, and State v. Smith, 56 S. D. 238, 228 N.W. 240, 243, 244, where on appeal new trials were granted. Many decisions on the general subject are cited in the annotation commencing page 1088 of 21 A. L. R.2d and the earlier annotations referred to at page 1093. Some of the observations in State v. Neville, 227 Iowa 329, 288 N.W. 83, and Lynch v. Kleindolph, 204 Iowa 762, 216 N.W. 2, 55 A. L. R. 745, appear to be applicable here.

■ IV. As stated at the outset, defendant was sentenced to the penitentiary for a term not to exceed 50 years. If he is again

convicted of murder it should be kept in mind the crime is not within the purview of the indeterminate sentence law, Code section 789.13, and such a sentence as was imposed here is too indefinite to be permitted to stand. State v. Jackson, 251 Iowa 537, 546–549, 101 N.W.2d 731, 736–738. If this were the only occurrence in the trial court not to be approved we would have the power to impose a proper sentence. Jackson case, supra.

Since we hold defendant is entitled to a new trial the cause is—Reversed and remanded.

All JUSTICES concur except HAYS, J., not sitting.