STATE of Iowa, Appellee,

v.

Francis D. FETTERS, Appellant.

No. 55091.

Supreme Court of Iowa.

Nov. 15, 1972.

85

Ulstad & Guinan, Fort Dodge, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., Richard C. Lunn, Asst. County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

MASON, Justice.

Francis D. Fetters appeals from judgment entered on a jury verdict convicting him of breaking and entering in violation of section 708.8, The Code. The State charged by county attorney's information that defendant intended to commit larceny at the time of breaking and entering the dwelling house.

Defendant filed a pretrial motion to suppress certain written and oral statements made by him April 9, 1971, to the Webster County sheriff and his deputy, alleging several violations of defendant's constitutional rights. After hearing, the motion

was overruled and the matter proceeded to trial.

In the course of investigating an earlier breaking and entering of the Elmer Gerken farmhouse near Callendar in Webster County, the sheriff and his deputy went to a farm where Fetters was residing with his stepmother, Lorraine Schoonover, to question him about the theft of property from the Gerken residence. At the time, Larry Sego, who was involved in the Gerken break in, was being held in custody in the Fort Dodge city jail in connection with a parole violation. At the Schoonover farm the sheriff told Fetters he and his deputy wanted to talk to him and asked Fetters to come and sit in the officer's car. After they were in the car, the sheriff told Fetters they wanted to ask him some questions. During this questioning Fetters admitted involvement in the Gerken incident.

Defendant was then taken to the sheriff's office in Fort Dodge where his statement was first taken in longhand, exhibit 5. This statement was later typed and is identified in the record as exhibit 2. Fetters signed these statements as well as a typed statement, exhibit 1, in which there were set forth the four essential elements enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, of a proper warning to an individual being held for interrogation of his privilege against self-incrimination and his right to counsel under Amendments 5 and 6 of the federal constitution. See State v. Sefcheck, 261 Iowa 1159, 1170, 157 N.W.2d 128, 134 and State v. Davis, 261 Iowa 1351, 1354, 157 N.W.2d 907, 908.

Defendant assigns four errors relied upon for reversal. He asserts the court erred: (1) in admitting evidence of other crimes; (2) in refusing evidence of what defendant and Larry Sego relied upon in entering the other residence; (3) in admitting into evidence defendant's confession; and (4) in admitting evidence showing that the accomplice had been convicted of the same crime.

These assignments will be considered other than in the order argued.

I. Defendant's third assignment stems from the court's determination that statements made by him to the sheriff and his deputy were voluntary and admissible into evidence at his trial.

In motion to suppress these statements defendant had alleged they were obtained in violation of his privilege against self-in-. crimination and the right to counsel as protected by the constitution. He further alleged he did not have the mental capacity to understand his constitutional rights when advised thereof and did not understand he was waiving these rights and, hence, the statements were not voluntary.

As stated, the trial court held a pretrial suppression hearing to determine the admissibility of these statements as being voluntarily made. Defendant's tesimony at this hearing describing the events leading to his signing of the statements conflicts with the version of those circumstances as narrated by the sheriff and his deputy. The officers testified in detail concerning the manner in which they advised defendant of his privilege against self-incrimination and the right to counsel both at the Schoonover farm before interrogation was commenced and again at the sheriff's office before the statements were signed. They stated that in their opinion Fetters fully understood his rights, waived them and voluntarily signed the statements.

However, defendant contends his signed statements were not voluntarily given because of his illiteracy and inability to comprehend what his constitutional rights were.

The record discloses that Fetters had been in special education and had completed either the sixth or seventh grade. He was 24, married and had been living with his wife and child in Webster county while working for $2.50 an hour. Although he had passed a test and secured a license to operate a motor vehicle, defendant claims

he can read only a little English, not much. Defendant maintains the officers told him they wanted him to sign some papers "on Larry Sego" whom he had known for about five or six years. He did not read either exhibit 2 or 5 and thought he was signing statements against Sego, not a confession of his own crime. He admitted the deputy read the statements to him but insists he did not understand all the words.

At the conclusion of the hearing the court held defendant had been duly advised of his constitutional rights guaranteed by Amendments 5 and 6 of the federal constitution before the officers instituted any process of interrogation which lent itself to eliciting incriminating statements.

The court expressed some concern as to whether the statement identified as exhibit 5 was in fact voluntary because of defendant's I.Q. of 67. It concluded it had been established beyond a reasonable doubt the statements were voluntarily made. The court explicitly advised defendant's counsel its ruling did not preclude defendant from presenting at trial the circumstances under which the alleged statements were made to aid the jury in determining the weight to be given such statements.

The procedure adopted by the trial court in holding a pretrial suppression hearing was in accordance with the pronouncement made in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, where the Court held that a criminal defendant who challenges the voluntariness of a confession made to officials and sought to be used against him at his trial has a due process right to a reliable determination that the confession was in fact voluntarily given and not the outcome of coercion which the constitution forbids. However, the Court apparently left the states free to choose between the Massachusetts rule and the orthodox rule as to the procedure to be adopted.

In State v. Holland, 258 Iowa 206, 214–215, 138 N.W.2d 86, 90–91, this court in adopting the orthodox rule announced the procedure to be followed by trial courts in determining the question of the voluntariness of a defendant's confession and its admissibility in evidence. The trial court followed the prescribed procedure in making an initial determination that defendant's statements were voluntary before permitting the jury to hear testimony regarding defendant's incriminating statements.

It is noted the trial court concluded in determining admissibility of defendant's statements that the State had established beyond a reasonable doubt they were voluntary. In this connection we call attention to Lego v. Twomey, 404 U.S. 477, 487–489, 92 S.Ct. 619, 626–627, 30 L.Ed.2d 618, 626–627, where the Court announced that the prosecution must prove at least by a preponderance of the evidence that a confession of a criminal defendant was voluntary; that proof beyond a reasonable doubt was unnecessary before admitting a confession into evidence. The decision left states free, pursuant to their own law, to adopt the higher standard.

Before the *Lego* decision which was announced January 12, 1972, there had been a considerable variety of opinions, both state and federal, as to the quantum of proof required to sustain the state's burden.

In State v. Clough, 259 Iowa 1351, 1357, 147 N.W.2d 847, 851, a divided court indicated that the state in order to sustain its burden must establish the defendant was *clearly* advised of his constitutional rights. The question was not reached in State v. Holland, supra.

■ As a guideline for trial courts we now hold when a confession of a criminal defendant is challenged at a pretrial suppression hearing as involuntary, the burden is on the state to prove by a preponderance of the evidence that the confession was voluntary as a prerequisite to its admissibility into evidence at his trial; the more stringent standard of proof beyond a reasonable doubt is not required on this challenge.

In State v. Niccum, 190 N.W.2d 815, 822 (Iowa 1971), this court acknowledged awareness "of the heavy burden the State has to demonstrate defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda v. State of Arizona, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724."

■ Between them, the sheriff and his deputy testified Fetters was warned as to his constitutional rights under Amendments 5 and 6 of the federal constitution at least three times, twice before the formal statement was taken at the sheriff's office. Fetters denied the warnings had been given more than once, at the farm. He admitted there was no coercion, threats, or promises.

The State has fully demonstrated under the record before us Fetters was adequately advised of these constitutional rights after he was taken into custody at the Schoonover farm before any process of interrogation had been instituted by the officers.

However, even though Fetters was properly advised of these constitutional rights by the sheriff and the deputy, the State still had the additional burden of establishing Fetters voluntarily, knowingly and intelligently waived his right to remain silent and his right to assistance of counsel.

■ Waiver is an intentional relinquishment of or an abandonment of a known right or privilege. State v. McClelland, 164 N.W.2d 189, 195 (Iowa 1969).

As stated, defendant alleged as a second ground in motion to suppress that his signed statements were not voluntarily given because of his illiteracy and inability to comprehend what his constitutional rights were.

■ The general rule as to the effect of the mental deficiency of one confessing to a crime on the voluntariness or admissibility of his confession is stated in an annotation in 69 A.L.R.2d 348, 350, as follows:

"The law on the question * * * is relatively clear and may be summarized as follows: mental subnormality on the part of one confessing to a crime does not of itself deprive the confession of voluntariness or bar its admission in evidence so long as the subnormality has not deprived the person in question of the capacity to understand the meaning and effect of the confession. But mental subnormality is a factor to be considered in determining the issues of voluntariness and admissibility, and, where accompanied by other factors indicative of an absence of voluntariness, will require that the confession be excluded.

"* * *

"There is general agreement among the courts that a confession of crime is not inadmissible merely because the accused, who was not insane, was of less than normal intelligence."

The first paragraph of the foregoing statement of law was quoted with approval in State v. Faught, 254 Iowa 1124, 1130, 120 N.W.2d 426, 429–430, where the court also quoted this from 23 C.J.S. Criminal Law § 828: " '* * * mental incapacity which does not render a person incompetent as a witness generally will not require the exclusion of his confession.

" '* * * generally a confession will not be excluded on the sole ground that accused is mentally weak, * * *.' "

The *Faught* opinion continues:

"We are clear that evidence of a defendant's mental weakness, even though short of insanity *and not affecting admissibility of a confession,* is proper for the jury to consider in determining the weight and effect to be given the confession or other incriminating statements. * * * [citing authorities]." (Emphasis supplied). *Id.* 254, Iowa at 1131–1132, 120 N.W.2d at 430.

It will be recalled the trial court in ruling on the voluntariness of defendant's statements explicitly advised counsel that

nothing in connection with its ruling was to be construed as precluding defendant from presenting to the jury the circumstances under which the statements were made for the purpose of aiding the jury in determining the weight to be given defendant's incriminating statements.

Examination of the record discloses defendant was permitted to introduce evidence at trial bearing on his low intelligence, including a letter admitted by stipulation from Joseph J. Goss of Cherokee Mental Health Institute detailing the results of his psychiatric interviews, psychological testing, social history, physical and neurological examination of Fetters.

Defendant does not appear to quarrel with the foregoing principles of law recognized in State v. Faught but argues that neither State v. Leiss, 258 Iowa 787, 140 N.W.2d 172, nor State v. Clough, 259 Iowa 1351, 147 N.W.2d 847, both decided before Miranda v. State of Arizona, supra, and relied upon by the trial court in its ruling, states the proper approach for an appellate court in reviewing an assigned error asserting a confession was not freely and voluntarily given.

We need not pursue the merits of defendant's argument particularly in view of the following statement in State v. Niccum, 190 N.W.2d at 822, decided October 13, 1971, and repeated in State v. Holderness, 191 N.W.2d 642, 646–647 (Iowa 1971):

"In determining whether the State has sustained its burden of establishing a valid waiver by defendant of his constitutionally protected rights in the absence of an express waiver, this court examines the totality of circumstances—the attendant facts of the case—as shown in the record. This court has applied this test in determining similar factual issues. See State v. McClelland, 164 N.W.2d at 195, and State v. Williams, 182 N.W.2d [396], at 401."

In emphasizing his low intelligence Fetters must qualify this language from *Holderness*, 191 N.W.2d at 645–646:

"While defendant is undoubtedly of low intelligence, his work background as well as his testimony indicates sufficient intelligence to understand events as they take place. He is of sufficient intelligence to own a car, secure a driver's license and * * *. He had been living alone for some time and apparently got along satisfactorily."

 Fetters had a driver's license, operated an automobile, and had been employed at a wage of $2.50 per hour. Moreover, he lived with his wife and child and apparently was able to provide for them and himself.

After considering all the circumstances shown and from our own independent examination of the record we find the statements made by defendant to the officers were freely and voluntarily made and admissible in evidence at his trial. Defendant's assignment asserting the trial court erred in overruling his motion to suppress is without merit.

II. The State tried the case to the jury on the theory Fetters had aided and abetted Larry Sego in the breaking and entering of the Gerken residence and in the larceny of property therefrom. He was charged and tried as a principal. Section 688.1, The Code.

 To aid and abet means to assent to an act or lend countenance or approval either by active participation in it or by some manner encouraging it. Knowledge is an essential element of aiding and abetting. Guilt of a person charged with aiding and abetting must be determined upon the facts which show his part in the crime and does not depend upon another's degree of guilt. State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879, 881; State v. Kittelson, 164 N.W.2d 157, 161–162 (Iowa 1969); State v. Brown, 172 N.W.2d 152, 155 (Iowa 1969).

The State had charged that Fetters intended to commit a felony at the time of

breaking and entering the Gerken residence.

■ It was a necessary part of the State's case in prosecution for breaking and entering with intent to commit larceny to prove beyond a reasonable doubt Fetters had broken into the Gerken residence with such intent. Intent to commit a public offense is vital under section 708.8, The Code. State v. LaMar, 260 Iowa 957, 963, 151 N.W.2d 496, 499; State v. Allnutt, 261 Iowa 897, 905, 156 N.W.2d 266, 271.

The State introduced testimony of Larry Sego detailing circumstances of other breaking and enterings in which Fetters was involved for the purpose of meeting its burden of establishing this necessary intent. These offenses occurred both before and after the Gerken incident and in each there was a theft of property.

In motion for directed verdict made at the close of the State's evidence and renewed at the close of all evidence, defendant asserted the State had "failed to show specific intent, the criminal intent required of the defendant; intent beforehand, some kind of mental thought, or by his other actions or deeds that he intended to commit a public offense when, or if he entered the residence * * * in question, the place where the alleged crime took place."

■ In support of his first assignment that the court erred in admitting evidence of other crimes defendant argues his intent was not in issue since his own admission as a witness had removed this issue from the case. He maintains the only issue was his participation in aiding and abetting the breaking and entering at the Gerken residence.

The State, on the other hand, contends evidence of other reasonably similar or like offenses by defendant was admissible as relevant to prove a material issue in the case such as intent.

Defendant does not support his argument that intent was not an issue in the case by any reference to any part of the record of his testimony that would constitute an admission that the breaking and entering was perpetrated with an intent to commit a felony. Even if support did appear in the record for this argument, it is without merit. State v. Kappen, 191 Iowa 19, 29, 180 N.W. 307, 312; Henderson v. Ball, 193 Iowa 812, 822, 186 N.W. 668, 672; State v. Leitzke, 206 Iowa 365, 368, 218 N.W. 936, 937; State v. Griffin, 218 Iowa 1301, 1311, 254 N.W. 841, 846; State v. Simpson, 243 Iowa 65, 50 N.W.2d 601, 604–605.

State v. Vance, 119 Iowa 685, 94 N.W. 204, relied upon by defendant, has been repudiated by this court in the cited cases insofar as it holds otherwise.

Defendant's contention that intent was not an issue in the case is without merit.

This brings us to defendant's remaining contention urged in this assignment that the court erred in admitting evidence of other crimes.

The following statements of law are articulated in State v. Wright, 191 N.W.2d 638, 639–640 (Iowa 1971):

"* * * The general principle is that evidence to show the commission of crimes other than the one with which a defendant stands charged is inadmissible. * * * [citing authorities]

"There are a number of recognized exceptions to this exclusionary rule which permit the use of otherwise prohibited evidence if it tends to prove an element of the crime for which the defendant is then on trial, even though it also—incidentally—establishes the commission of another offense. We cite only several of the numerous cases which support this rule. * * * [citing authorities]."

■ These exceptions permit reception of evidence of other reasonably similar or like offenses by defendant to the one on which the prosecution is based to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) common scheme em-

bracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial. In addition to State v. Wright see State v. Armstrong, 183 N.W.2d 205, 207 (Iowa 1971) and State v. Hopkins, 192 N.W.2d 747, 748 (Iowa 1971).

Of course, evidence of such offenses by defendant must be relevant to the issues to be admissible under the foregoing exceptions to the exclusionary rule since "relevance is the basic principle upon which admissibility of such evidence turns." State v. Wright, 191 N.W.2d at 640.

 In order to be relevant to the issues, the other offenses of which testimony can be offered must, as stated, be reasonably similar to the act on which the prosecution is based. There must be such connection between the offense charged and the other offenses that the latter can reasonably be said to tend to establish the first, or some essential fact in issue. In other words, the other offenses must be wrongful acts, crimes, offenses or attempted offenses of a like nature to the charge against accused. Right conduct, lawful acts and honest transactions ordinarily are not indicative of a plan or scheme to commit the offense charged nor of any wrongful or criminal intent with respect to its commission on the part of the accused. State v. Cotton, 240 Iowa 609, 620, 33 N. W.2d 880, 887.

 The other offenses described by Sego in which Fetters was involved met the above-mentioned tests of relevancy.

Defendant's assignment that the court erred in admitting evidence of such other offenses is based on his contention the State failed to establish such offenses were criminal in nature or that "there was anything illegal about the other alleged crimes."

 The proof of similar transactions involving crime must be clearly shown.

Mere suspicion is not enough. The evidence must be such that there can be no room for speculations in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not. State v. Armstrong, 183 N.W.2d at 208. However, commission of such other offenses need not be established beyond a reasonable doubt to be admissible. State v. Hopkins, 192 N.W.2d at 749.

Sego's testimony relating other offenses by defendant was admissible under the exceptions to the general rule. Such evidence was relevant to a vital issue in the State's case and admissible.

This assignment cannot be sustained.

 III. In another assignment defendant challenges the court's ruling admitting testimony that Sego was incarcerated in the state penitentiary. Defendant's counsel in cross-examining Sego asked if he had been charged with the crime of breaking and entering the Gerken residence. The witness replied, "No." On redirect examination the prosecution asked Sego if he was presently incarcerated in the state penitentiary. This question was objected to for the reason stated that the prosecution was trying to impeach its own witness. The court stated the question was asked whether Sego was charged with the crime. It was of the opinion this opened up the matter and overruled the objection. The redirect examination established Sego was incarcerated because he violated his parole, not because he was convicted of breaking and entering the Gerken residence.

When defendant objected to the question on the ground it was an attempt to impeach its own witness, the State immediately made known to the court and counsel the purpose for which the evidence was offered.

This statement cited by the State from McCormick on Evidence, (Second Ed.), section 32, supports the trial court's ruling:

" * * * Reply to new matter drawn out on cross-examination is the normal

function of the redirect, and examination for this purpose is a matter of right, though its extent is subject to control in the judge's discretion.

" * * * The reply on redirect may take the form of explanation, avoidance, or qualification of the new substantive facts or matters of impeachment elicited by the cross-examiner." As further support see 6 Wigmore on Evidence, (Third Ed.), section 1896.

Relative to the contention the State was attempting to impeach its own witness see rule 607, Proposed Rules of Evidence for United States Courts and Magistrates which provides: "The credibility of a witness may be attacked by any party, including the party calling him."

There is no merit in defendant's assignment.

IV. Defendant's remaining assignment of error stems from the court's ruling sustaining the State's objection to a question asked of Patricia Fetters, defendant's wife.

Mrs. Fetters was asked in reference to a trip made with defendant and Sego to a Picker residence on a farm near Roelyn, "Did you have a conversation with yourself and your husband and Larry Sego that you were going to take some stuff other than the refrigerator from the house?" The State objected, "to that question for the reason that it is leading, and for the reason that it calls for hearsay." The objection was sustained.

Defendant now contends he was offering this evidence for the sole purpose of explaining why he and Sego went to the Picker farmhome and removed property. However, after the objection was sustained defendant failed to make known to the court the limited purpose for which the evidence was offered. See Lemke v. Mueller, 166 N.W.2d 860, 870–871 (Iowa 1969). Materiality of the evidence sought to be elicited for this limited purpose is not apparent.

The court committed no error in disallowing the evidence when its admissibility was challenged.

We have considered all of the contentions urged by defendant and find none of them require reversal. The case is therefore affirmed.

Affirmed.